[No. 14885-4-II.    Division Two. • February 28, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. GARY. ALLEN ALLDREDGE, *Appellant*.

*Steven W. Thayer* and *Thayer & Muenster,* for appellant.

*Arthur D. Curtis, Prosecuting Attorney,* and *Richard Melnick, Deputy,* for respondent.

MORGAN, C.J. — Gary Allen Alldredge appeals from a conviction for unlawfully manufacturing marijuana. We affirm.

At about 6 p.m. on October 4, 1990, approximately eight police officers went to Alldredge's home to execute a search warrant. The validity of the warrant is not questioned by either party. The basis for its issuance was probable cause to believe Alldredge was growing marijuana.

The police had no specific information that Alldredge was armed or dangerous. In the past, however, they had often found firearms while executing search warrants on homes in which marijuana was being grown.[1]

Six officers went to the front door.[2] The lead officer and another officer took positions on each side of the door. The remaining officers stood behind the first two, and all six had their guns drawn.

The lead officer knocked but received no response. After 5 or 10 seconds, he knocked again, this time announcing "Police with a search warrant". He heard footfalls coming toward the door, and the door opened, revealing Alldredge. At this point, Alldredge and the lead officer were face to face, with the lead officer pointing his gun at Alldredge's chest. The lead officer again announced, "Police with a search warrant". Simultaneously, he pushed Alldredge back into the living room. He was followed by the remaining officers, who then "swe[pt] the residence for additional persons".[3]

Alldredge had just finished taking a shower when he heard the knock at his front door. He went to the door, opened it, and was pushed back into the living room as described above. He did not perceive an announcement of identity or purpose before or after he opened the door. He concedes, however, that he was very frightened after he opened the door, and that he might have failed to perceive an announcement made at that time.

At no time was Alldredge given an opportunity to grant or deny permission for the police to enter his house. The lead officer did not ask, "May we come in?", nor did Alldredge have a chance to respond, even impliedly, to that sort of inquiry. According to the lead officer, "As soon as the

---

[1] One of the officers had executed about 50 search warrants involving marijuana grow operations. He later testified that he had found weapons in about 75 percent of those searches.

[2] Two officers went to the back of the house.

[3] Report of Proceedings, at 8.

door was open enough to where I could see somebody, . . . I announced again and went in."[4] According to the trial court's findings, "Alldredge had no time to react before he was pushed back into the residence."[5]

The police found about 50 marijuana plants growing in the house. About a week later, Alldredge was charged with unlawfully manufacturing marijuana.

Before trial, Alldredge filed a motion to suppress. He did not allege that the search warrant had been improperly issued; rather, he alleged it had been improperly executed. More specifically, he argued that the police had violated the knock-and-wait rule by not asking permission to enter the house, and by not giving him an opportunity to grant or deny such permission. The trial court denied the motion and convicted on stipulated facts.

Alldredge now appeals. The sole issue on appeal is whether the police violated the knock-and-wait rule because they did not ask permission to enter the house, and because they did not give him an opportunity to grant or deny such permission.[6]

█ The knock-and-wait rule basically has two parts. One requires that the police knock and announce their identity

---

[4] Report of Proceedings, at 11.

[5] Finding of fact 9.

[6] A possible additional issue is not before us. When the lead officer knocked at Alldredge's front door, he was wearing a mask over his face, blue jeans, and a dark-colored ballistic vest. He had his police badge pinned to the front of his vest, but no other police markings visible from the front. He had the words "Clark-Skamania Narcotics Task Force" stenciled on the back of his vest. The other officers at the door, except one, wore masks and clothing of the same sort. One officer was in regular police uniform. The State explains that most of the officers worked undercover, and that they wore masks to protect their identities. Alldredge testified in court that when he opened the door, all he saw was the lead officer "right in front of me". The trial court found that Alldredge was "so scared" that he "did not see or hear much of anything". Clerk's Papers, at 3-4; finding of fact 8. Both the testimony and the finding seem understandable, given that the lead officer wore a black mask, had a gun pointed at Alldredge's chest, and was speaking to Alldredge. Alldredge does not argue that these facts might affect whether the warrant was reasonably executed, and we do not consider that issue.

and purpose.[7] *State v. Coyle*, 95 Wn.2d 1, 6, 621 P.2d 1256 (1980); *State v. Garcia-Hernandez*, 67 Wn. App. 492, 495, 837 P.2d 624 (1992); RCW 10.31.040. The other requires a waiting period, the duration of which is often linked to whether the police are refused admittance. *Coyle*, 95 Wn.2d at 6; *Garcia-Hernandez*, 67 Wn. App. at 495; RCW 10.31.040. As the Ninth Circuit has observed, "[B]oth the cases and the literature have concentrated solely upon the 'announcement' portion . . .; little attention has been devoted to the issue of when 'refusal of admittance' is necessary." *United States v. Bustamante-Gamez*, 488 F.2d 4, 10-11 (9th Cir. 1973), *cert. denied*, 416 U.S. 970 (1974).

The announcement portion of the rule is not in issue in this case. Alldredge does not dispute that the police knocked and announced their identity and purpose, both before and after he opened the door.

The waiting period is in issue. Alldredge argues that the waiting period could not end until the police requested, and he granted or refused, permission to enter. Essentially, he contends that when police executing a valid search warrant confront an occupant at the door, they must ask, "May we come in?", and then wait for an express or implied response. The State responds by asserting that the waiting period ended when Alldredge opened the door and the police identified themselves and their purpose face to face.

■ We begin by analyzing the waiting period constitutionally. The knock-and-wait rule is part of the constitutional requirement that search warrants be reasonably executed. *State v. Myers*, 102 Wn.2d 548, 552, 689 P.2d 38 (1984); *Coyle*, 95 Wn.2d at 6; *State v. Young*, 76 Wn.2d 212,

---

[7]In *State v. Coyle*, 95 Wn.2d 1, 6, 621 P.2d 1256 (1980) the Supreme Court said that the police must not only knock and announce, but also must demand admittance. Since then, however, it has been recognized that "[a] statement by police officers identifying themselves and advising that they possess a search warrant is implicitly a demand for admission into the house." *State v. Lehman*, 40 Wn. App. 400, 404, 698 P.2d 606, *review denied*, 104 Wn.2d 1009 (1985); *see also State v. Schmidt*, 48 Wn. App. 639, 643, 740 P.2d 351 (quoting *Lehman*), *review denied*, 109 Wn.2d 1013 (1987). Thus, we do not list demand for admittance as a separate element of the rule.

214-15, 455 P.2d 595 (1969); *Lehman,* 40 Wn. App. at 401; *State v. Edwards,* 20 Wn. App. 648, 650-51, 581 P.2d 154 (1978); *State v. Miller,* 7 Wn. App. 414, 417-18, 499 P.2d 241 (1972); *see Dalia v. United States,* 441 U.S. 238, 257, 60 L. Ed. 2d 177, 99 S. Ct. 1682 (1979) (details of executing search warrant rest in discretion of executing officers, "subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures.' "); *Ker v. California,* 374 U.S. 23, 33, 46, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963) (warrantless entry subject to federal constitutional standards). Reasonableness does not require that police wait, if to do so would serve no purpose. Thus, from a constitutional perspective the rule's waiting period ends not later than when the rule's purposes have been fulfilled.

■ The rule serves three purposes. One is to forestall violence. *Coyle,* 95 Wn.2d at 5. If the police enter a residence before its occupants perceive their identity and purpose, the occupants will be surprised; they may believe themselves under attack; and they may respond with force. If the police enter after the occupants have perceived their identity and purpose, it is more likely than otherwise that the occupants will peacefully submit to their authority.

A second purpose is to protect privacy, *Coyle,* 95 Wn.2d at 5, but in a limited way. The rule does not protect the overall privacy of the premises to be searched, for when police possess a valid search warrant, a neutral magistrate has already determined that privacy of the premises must temporarily yield to the needs of law enforcement. *State v. Myers, supra; People v. Tacy,* 195 Cal. App. 3d 1402, 1420-21, 241 Cal. Rptr. 400, 411 (1987). Nor does the rule protect an occupant of the premises against seizure, for a valid search warrant "implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers,* 452 U.S. 692, 705, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981); *Myers,* 102 Wn.2d at 556; *State v. Flores-Moreno,* 72 Wn. App. 733, 866 P.2d 648 (1994). However, the rule gives an occupant of the premises a few moments to answer the door, and during

that time he or she can curtail highly personal activities, such as those that might be occurring in the bathroom or bedroom. *Bustamante-Gamez,* 488 F.2d at 12; *Tacy,* 195 Cal. App. 3d at 1420-21.

A third purpose is to avoid unnecessary property damage. *Coyle,* 95 Wn.2d at 5. If the police enter without giving the occupant time to open the door, they will have to break it in, assuming it is locked. If they wait and the occupant opens it, property damage will be averted.

For the most part, each of these purposes is fulfilled not later than when the door of the premises is open, attended by an occupant, and the police have announced to the occupant their identity and purpose. *State v. Manning,* 396 So. 2d 219, 222 (Fla. Dist. Ct. App.), *review denied,* 407 So. 2d 1104 (1981); *State v. Walker,* 107 Idaho 308, 311-12, 688 P.2d 1213, 1216-17 (1984); *Commonwealth v. Goggin,* 412 Mass. 200, 202-03, 587 N.E.2d 785, 787 (1992); *cf. Ker,* 374 U.S. at 47 (Brennan, J., dissenting; knock-and-wait rule not violated by unannounced police intrusion "where the persons within already know of the officers' authority and purpose"). By then, the occupant knows the persons seeking entry are police, and the rule's purpose of preventing violence has been achieved to whatever extent is possible. *Bustamante-Gamez,* 488 F.2d at 11 ("To the extent that the rule prevents violence, its utility is exhausted when the actual announcement is made"). Highly personal activities are likely to have been terminated in the interval between the knock and the opening of the door,[8] and entry can be made through the open door without damage to property. *Bustamante-Gamez,* 488 F.2d at 11. Thus, from a constitutional perspective, the rule's waiting period should end not later than when the door of the premises is open, attended by an occupant, and the police have announced their identity and purpose while face to face with the occupant.

■ We next analyze the waiting period statutorily. RCW 10.31.040 provides:

---

[8]This case provides an example. Alldredge had been taking a shower, but had terminated that activity before coming to the door.

> To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance.

This language applies to search warrants as well as arrests. *State v. Shelly*, 58 Wn. App. 908, 910, 795 P.2d 187 (1990), *review denied*, 116 Wn.2d 1015 (1991).

■ RCW 10.31.040 codifies the knock-and-wait rule, at least in part. *Myers*, 102 Wn.2d at 552; *Lehman*, 40 Wn. App. at 401. It presupposes both an announcement and a waiting period. With regard to the waiting period, it clearly provides that an officer seeking entry need not wait *after* "he [or she] be refused admittance". The question here, however, is whether an officer must wait *until* "he [or she] be refused admittance". Alldredge says yes; the State says no.

The State is correct. RCW 10.31.040 must be read in light of its purposes. *Coyle*, 95 Wn.2d at 5. Its purposes are the same as those of the rule, because it embodies the rule. *Coyle*, 95 Wn.2d at 5. Thus, when the statute is read in light of its purposes, it provides that the waiting period ends *as soon as* the police are refused admittance, but *not later than* when the purposes of the rule are fulfilled. In other words, in *permitting* the police to enter after they have been refused admittance, it does not *preclude* them from entering sooner, provided that the purposes of the knock-and-wait rule have been fulfilled.[9]

■ Neither our constitutional nor statutory analysis involves consent, as opposed to notice. The rule's waiting period is not intended to require that police with a valid search warrant seek or obtain consent to enter the premises. When police have a valid search warrant, a neutral magistrate has already determined that they have the

---

[9]This view does not contravene *State v. Coyle, supra*, which states that police must be refused admittance before making entry. In *Coyle*, the police entered a motel room surreptitiously, without any knock or announcement of any kind. Thus, there was no issue regarding the waiting period between notice and entry, and the statement that the police must wait until refused admittance is dictum. In any event, *Coyle* is distinguishable, because two of the purposes of the rule, violence and privacy, had not been fulfilled when the police entered.

right to enter. Thus, they may enter with or without consent from an occupant.

This reasoning is reflected in *Myers,* 102 Wn.2d at 548. There, the police used a ruse to induce Myers to open his door. Before entering, however, they notified him face to face that they were police with a search warrant. Heroin was found, and Myers was convicted. He argued on appeal that the knock-and-wait rule had been violated because the police had neither sought nor obtained his informed consent to their entry. Upholding the search, the Supreme Court stated:

> This argument is not persuasive. The occupant's right of privacy is severely limited where the police have satisfied the Fourth Amendment's probable cause and warrant require-ments. In such a case, the officers possess the authority to intrude upon the privacy of the home regardless of the occu-pant's wishes and irrespective of his activity at the time of the intrusion. It is difficult to see how imposition of an informed consent standard at entry would meaningfully promote any concept of privacy.

*Myers*, 102 Wn.2d at 554-55.

Our constitutional and statutory analyses are supported by various cases. In *State v. Shelly*, 58 Wn. App. 908, 795 P.2d 187 (1990), *review denied*, 116 Wn.2d 1015 (1991), offic-ers armed with a valid search warrant went to the defen-dant's apartment and knocked. The defendant opened the door, looked startled, and "jumped back". One of the officers then said, "Kelso Police, search warrant", after which the officers entered the apartment without obtaining a grant or denial of permission. Drugs were found, and the defendant was convicted of possession with intent to deliver. On appeal, she argued that the police had violated the knock-and-wait rule because they had not given her an opportunity to grant or deny them admittance. Upholding the search, this court said:

> The facts of this case clearly show that defendant Shelly was aware of the police officers' presence, identity, and pur-pose when she opened the door. After defendant Shelly opened the door, observed the uniformed police, and heard them iden-tify themselves and their purpose, any grant or denial of

entrance by Shelly was irrelevant. At that point, the police, armed with a valid search warrant, could enter the premises, whether Shelly granted or denied them permission.

58 Wn. App. at 911.

In *Lehman,* 40 Wn. App. at 400, two officers went to the defendants' home to serve a search warrant. They knocked, and the wife opened the door. They identified themselves as police and said they had a warrant to search the house. Then they entered the house "[w]ithout waiting for her to grant or deny permission". 40 Wn. App. at 402. They found drugs, which the trial court later suppressed "because the officers did not expressly seek permission to enter and were neither granted nor denied permission to enter the house." 40 Wn. App. at 402. Upholding the search, Division One said:

> From the facts of this case, we find sufficient compliance to satisfy the purposes of the knock and announce statute. A statement by police officers identifying themselves and advising that they possess a search warrant is implicitly a demand for admission into the house. To wait for a grant or denial of admission when the occupant has opened the door would serve no purpose. At that point, the police can legally enter the premises whether permission to enter is granted or denied. The officers complied with the rule's requirements by giving notice of their authority and purpose to the person in apparent control of the premises.

40 Wn. App. at 404.

In *United States v. Kemp,* 12 F.3d 1140 (D.C. Cir. 1994), an officer went to the defendant's apartment to execute a valid search warrant. Through the open front door, he saw the defendant and two others sitting on a sofa in the living room, watching television. He announced his presence and purpose, then entered the apartment without waiting for a grant or denial of permission. He found contraband, which the trial court later suppressed. Reversing and upholding the search, the appellate court said:

> When an officer knocks on a closed door only to find himself looking at an occupant of the apartment through an open door, however, a different situation is presented. As soon as the officer makes his announcement, the occupant is aware of his presence and his purpose to execute a search warrant. Inas-

much as the occupant then has no right to refuse the officer admission, no interest served by the knock and announce statute would be furthered by requiring the officer to stand at the open doorway for at least ten seconds in order to determine whether the occupant means to admit him.

We say this having in mind three interests that are advanced by the knock and announce requirement of § 3109 [the federal equivalent of RCW 10.31.040]: (1) reducing the potential for a violent confrontation between the police and an occupant startled by an unannounced intrusion, *Miller v. United States*, 357 U.S. 301, 313 n. 12, 78 S.Ct. 1190, 1198 n. 12, 2 L.Ed.2d 1332 (1958); (2) preventing needless destruction of private property, *United States v. Bustamante-Gamez*, 488 F.2d 4, 9 (9th Cir. 1973); and (3) showing respect for the individual's privacy interest in his home. *Miller*, 357 U.S. at 313, 78 S.Ct. at 1197. As for the first, when the police and the occupant of a dwelling face each other through an open doorway and the police announce their purpose before entering, any violence that might ensue between the occupant and the officers is not attributable to surprise and is not likely to be averted by the police standing around for ten or more seconds. *See, e.g., Bustamante-Gamez*, 488 F.2d at 11 ("To the extent that the rule prevents violence, its utility is exhausted when the actual announcement is made"). Nor is the second interest, preventing unnecessary destruction of property, implicated when the door is open and the officers can enter peaceably into the premises. Finally, while respect for the individual's privacy in his home — qualified by the imminent execution of a valid search warrant — is well served by requiring the officer to knock and announce his authority and purpose, such respect would only be mocked by requiring the officer to wait on the doorstep, staring at the occupant, for some length of time until the occupant could be understood constructively to have refused him the entry to which he is entitled.

12 F.3d at 1142. Additional cases include *Bustamante-Gamez*, 488 F.2d at 10-12; *United States v. Byars*, 762 F. Supp. 1235 (E.D. Va. 1991); *Tacy*, 195 Cal. App. 3d at 1418-22; *People v. Uhler*, 208 Cal. App. 3d 766, 256 Cal. Rptr. 336 (1989); *Manning*, 396 So. 2d at 222; *Walker*, 107 Idaho at 311-12; *Goggin*, 412 Mass. at 202-03; and *State v. Applebury*, 34 Ohio App. 3d 376, 518 N.E.2d 977 (1987).

Based on the foregoing, we conclude that the entry in this case was lawful. The police had a search warrant of unquestioned validity. After they knocked, Alldredge opened the door. The police immediately told him, face to face, who they

were and why they were there. These actions fulfilled the purposes of the knock-and-wait rule, and entitled the police to enter by virtue of the authority granted in the warrant. We conclude that the trial court did not err when it denied the motion to suppress.

Affirmed.

ALEXANDER, J., and PETRICH, J. Pro Tem., concur.

Reconsideration denied April 21, 1994.