[No. 37912-7-I.   Division One.   August 11, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. GRANT MYRON RICHARDS, *Appellant*.

---

[7]*Brown*, 113 Wn.2d at 539.

[8]*Brown*, 113 Wn.2d at 538-40.

*Eric J. Nielsen* and *Nielsen, Broman & Associates, P.L.L.C.*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Shannon D. Anderson, Deputy*, for respondent.

KENNEDY, A.C.J. — This is Grant Richards' second appeal of his 1991 conviction for possession of cocaine with intent to deliver. Following the first appeal, in which Richards contended, inter alia, that the trial court erred in finding that the police officers who searched his home pursuant to a search warrant complied with the knock and announce rule, this court remanded for clarification of the trial court's findings on the issue of whether the officers announced their identity and purpose before or after entering the apartment.[1] On remand, the trial court entered supplemental findings confirming that the officers had announced their identity and purpose before entering the apartment, and concluded that the police were not required to wait for Richards to permit or deny them entry because Richards made eye contact with the officers when they called his name and announced their purpose and

---

[1] This court's unpublished opinion in the first appeal is noted at *State v. Richards*, No. 29422-9-I, 75 Wn. App. 1001 (1994), *review denied*, 126 Wn.2d 1002 (1995).

"knew who they were and why they were there." Richards again appeals, contending, as before, that the police failed to comply with the knock and announce rule and that the evidence against him should have been suppressed. We hold that under the facts of this case, the officers were not required to wait, after knocking and announcing, for Richards to grant or deny them entry because doing so would have served none of the purposes of the knock and announce rule. Accordingly, we affirm.

## FACTS

On April 4, 1990, at about 5:55 p.m., Mercer Island Police officers executed a search warrant at Grant Richards' apartment. Detectives Erickson and Herst, who were dressed to resemble drug dealers, approached a sliding glass door on the west side of the apartment with guns drawn. The detectives had information that this was the entrance Richards used most frequently. The detectives did not display badges or any other readily identifiable symbol of their official capacity. When the detectives reached the door, they found the glass door open and the screen door closed. Through the screen door, Detective Erickson could see Richards and another man inside the apartment. Richards was kneeling on the floor with his back to the officers. Detective Erickson shouted, "Hey, Grant," and Richards turned and looked at him. At that point, Detective Erickson opened the screen door, shouted, "Police. We have a search warrant," and walked into the apartment. Uniformed police officers, who had been standing away from the door so that the apartment's occupants could not see them at the time the announcement was made, entered a few steps behind the two plainclothes detectives. Richards showed the detectives where he kept cocaine and confessed to selling the drug in small quantities. Police recovered a total of seven bindles of cocaine and various drug paraphernalia from Richards' home. They also found other controlled substances in the apartment that Richards claimed were for his personal use. Ri-

chards was charged with possession of cocaine with intent to deliver.

Richards moved to suppress the evidence on the ground that the officers violated the knock and announce rule when they entered his home. The trial court denied the motion to suppress. Richards was found guilty at a stipulated facts trial.

## DISCUSSION

■ "The knock-and-wait rule is part of the constitutional requirement that search warrants be reasonably executed." *State v. Alldredge*, 73 Wn. App. 171, 175, 868 P.2d 183 (1994) (citations omitted). As codified in Washington, the rule provides that in order to make an arrest in a criminal action, police officers may forcibly enter a home or building if they are refused admittance after giving notice of their identity and purpose. RCW 10.31.040. The rule applies to searches as well as arrests, not just when force is used to gain entry, but whenever police enter without permission of the occupants. *Alldredge*, 73 Wn. App. at 178; *State v. Coyle*, 95 Wn.2d 1, 5, 621 P.2d 1256 (1980). The remedy for an unexcused failure to comply with the rule is the suppression of physical evidence or statements obtained by means of the entry. *Coyle*, 95 Wn.2d at 14.

■■ To determine whether police have complied with the knock and announce rule, the court must decide whether the police procedure complied with the purposes of the rule, which are: (1) to reduce the potential for violence to both police and occupants arising from an unannounced entry; (2) to prevent destruction of property; and (3) to protect the occupants' right to privacy. *Coyle*, 95 Wn.2d at 5; *State v. Garcia-Hernandez*, 67 Wn. App. 492, 496, 837 P.2d 624 (1992). Strict compliance with the rule is required unless the State can demonstrate that one of two exceptions to the rule applies: exigent circumstances or futility of compliance. *Coyle*, 95 Wn.2d at 9-11. The State does not contend that an exception to the knock and an-

nounce rule applies in this case; therefore, strict compliance with the rule must be shown.

We are satisfied that the police officers in this case strictly complied with the knock and announce rule. Calling Richards' name was the equivalent of a knock, in that the apartment's occupants were clearly visible through the screen door. Shouting "Hey, Grant" was designed to get their attention just as a knock would have. When Richards turned and looked at the detectives, one of the detectives said, "Police. We have a search warrant," thereby identifying the detectives as police officers and announcing that the purpose of their visit was to execute a search warrant. This was the equivalent of a demand for entry. *See State v. Lehman*, 40 Wn. App. 400, 404, 698 P.2d 606 (1985); *State v. Schmidt*, 48 Wn. App. 639, 643, 740 P.2d 351 (1987).

Although the detectives did not wait for Richards to grant or deny them permission to enter before opening the screen door and entering the apartment, waiting would have served none of the purposes of the rule in this case. Because an occupant, in the face of a valid search warrant, has no right to refuse admission to police, no interest served by the knock and announce rule would be furthered by requiring police officers to stand at an open doorway for a few seconds in order to determine whether the occupant means to admit them. *United States v. Kemp*, 12 F.3d 1140, 1142 (D.C. Cir. 1994), quoted with approval in *Alldredge*, 73 Wn. App. at 180-81. We agree with the *Alldredge* court that police need not wait to be permitted or denied admittance "provided that the purposes of the knock-and-wait rule have been fulfilled" at the time of entry. *Alldredge*, 73 Wn. App. at 178.

Richards raises an argument that was not raised in *Alldredge*. *See Alldredge*, 73 Wn. App. at 174 n.6 (identifying as a potential issue the question of whether the fact that nonuniformed, undercover officers executing a search warrant wore masks to protect their identity and so frightened the defendant by their appearance that he was

incapable of seeing or hearing much of anything might affect whether the warrant was reasonably executed). Richards contends that the detectives' entry defeated the first purpose of the knock and announce rule, preventing violence, in that the lead detectives were dressed as drug dealers, had no visible identification, and appeared suddenly at his open door with guns drawn, increasing the probability that Richards would react violently. Because the uniformed officers were not immediately visible, and because the lead detectives were not readily identifiable by their clothing as legitimate law enforcement officers, Richards argues that this case is similar to *State v. Ellis*, 21 Wn. App. 123, 584 P.2d 428 (1978).

In *Ellis*, plainclothes officers executing a search warrant at 4:00 a.m. first tried to gain entry by the ruse of claiming to be an acquaintance of the defendant. When the defendant realized that he had been tricked into opening the door, he tried to shut it again, but the officers forced the door open while simultaneously announcing their true identity. The *Ellis* court observed that because the uniformed officers in that case were not reasonably visible to one looking out the door, because the plainclothes detective who announced the officers' true identity did not clearly display his badge, and because the officers forced entry while simultaneously announcing their true identity and purpose, the defendant was faced with a situation resembling that in *State v. Bresolin*, 13 Wn. App. 386, 534 P.2d 1394 (1975), in which robbers entered a house falsely claiming to be federal agents. *Ellis*, 21 Wn. App. at 127. The *Ellis* court noted that the circumstances of the confrontation made it understandable that the defendant, upon discovering that he had been tricked into opening the door, would instinctively close the door in an effort to protect himself. *Id.* The *Ellis* court observed that forceful entry simultaneous with identification is dangerous when the only visible officers are in plain clothes, especially during late night hours. *Ellis*, 21 Wn. App. at 127-28.

We decline to adopt two different rules regarding the

necessity to wait after knocking and announcing depending upon whether officers are in uniform or plain clothes. The rule announced in *Alldredge* applies in both situations: so long as waiting would serve none of the purposes of the rule, there is no need to wait for permission to enter after police have identified themselves and their purpose. *Alldredge*, 73 Wn. App. at 178. There is no requirement under this rule that officers wait to be permitted or denied entry simply because they are dressed in plain clothes or dressed to resemble drug dealers. Instead, as was recently reaffirmed by the United States Supreme Court, each case must be evaluated on its own facts. *See Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416, 1421, 137 L. Ed. 2d 615 (1997). This case is plainly distinguishable from *Ellis*. Here, the officers did not first attempt to enter Richards' apartment by using a ruse, as the officers in *Ellis* did. The defendant in *Ellis* had good reason for disbelieving the announcement of the true identity of the police because the officers had already tricked him into opening the door by claiming to be an acquaintance. Richards had no such reason for disbelieving the police announcement of identity and purpose. In addition, although the lead detectives' clothing both in this case and in *Ellis* failed to reveal their true identity as police officers, here, unlike *Ellis*, the detectives identified themselves *before* walking into Richards' apartment and did so during late afternoon hours as opposed to the middle of the night. The purposes of the knock and announce rule were satisfied in this case at the point of entry, and the detectives were not required to wait beyond that point. From a constitutional perspective, the rule's waiting period ends not later than when the rule's purposes have been fulfilled. *Alldredge*, 73 Wn. App. at 176. If police enter before the occupants are advised of their identity and purpose, the occupants will be surprised, may believe themselves to be under attack, and may react with force. But when police announce both their identity and purpose to the occupants, it is more likely than otherwise that the occupants will, as was true in this case, peacefully submit to their authority. *Alldredge*, 73

Wn. App. at 176. In circumstances where the occupants have no reason to disbelieve the police statement of identity and purpose, such as the failed ruse utilized in *Ellis*, the fact that the officers are in plain clothes is irrelevant. We affirm the trial court's conclusion that waiting for Richards to grant or deny entry under the circumstances of this case would have served none of the purposes of the knock and announce rule.

Affirmed.

AGID and BECKER, JJ., concur.

Review granted at 134 Wn.2d 1010 (1998).