[No. 65931-1. En Banc.]
Argued May 26, 1998.     Decided September 10, 1998.

THE STATE OF WASHINGTON, *Respondent*, v. GRANT MYRON RICHARDS, *Petitioner.*

362

ALEXANDER, JOHNSON, MADSEN, and SANDERS, JJ., dissent by separate opinion.

*Nielsen, Broman & Associates, P.L.L.C.*, by *Christopher Gibson*, for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Shannon D. Anderson, Deputy*, for respondent.

Smith, J. — Petitioner Grant Myron Richards seeks review of a decision of the Court of Appeals, Division One, which affirmed a decision of the King County Superior Court denying his motion to suppress evidence, ruling that police officers executing a valid search warrant were not required to wait for Petitioner to grant or deny them entry into his apartment because all the requirements of RCW 10.31.040, the "knock and wait" rule, were satisfied. We granted review. We affirm.

## QUESTION PRESENTED

The question presented in this case is whether plain-clothes police officers executing a valid search warrant violated the "knock and wait" or "knock and announce" rule, codified in RCW 10.31.040, absent exigent circumstances, by not waiting for Petitioner to grant or deny them entry into his apartment after they announced their presence, identity and purpose while entering an open sliding glass doorway.

## STATEMENT OF FACTS

At about 5:55 P.M. on April 4, 1990, members of the Multi-Eastside Agency Narcotics Task Force, in association with the Mercer Island Police Department, executed a valid narcotics search warrant at the apartment residence of Petitioner Grant Myron Richards at 13012 - 117th Place Northeast, number F-4, Kirkland, King County, Washington.[1] With guns drawn, Detectives Peter Erickson[2] and [FNU] Herst[3] approached a sliding glass door on the west side of the apartment.[4] They had information this was the

---

[1]Clerk's Papers at 16-17.

[2]*Id.* at 16.

[3]*Id.* at 7.

[4]*Id.* at 27 (Court of Appeals, Division One, unpublished opinion in the first appeal, *State v. Richards*, 75 Wn. App. 1001 (1994), *review denied*, 126 Wn.2d 1002 (1995)).

entrance most frequently used by Petitioner.[5] Both detectives were dressed in jeans and T-shirts and had long hair and beards.[6] They did not display any identifiable symbol of their status as police officers.[7] Upon reaching the sliding glass door, the detectives found it open,[8] the curtains open,[9] and the sliding screen door closed.[10] Through the screen door, Detective Erickson could see Petitioner Richards and another man inside the apartment.[11] Petitioner was kneeling on the floor adjusting a video cassette recorder with his back to the door.[12] Detective Erickson shouted, "Hey, Grant," and Petitioner turned and looked at him.[13] Detective Erickson then slid open the screen door, shouted "Police. We have a search warrant" and walked through the open door into the apartment.[14] Uniformed police officers, who had been standing against the wall beside the screen door to conceal their presence from the apartment's occupants,[15] immediately followed the two plainclothes detectives into the apartment after announcing their identity and purpose.[16]

Petitioner Richards was advised of his "Miranda" rights, but waived them.[17] He said he understood his rights and

---

[5]*Id.*

[6]*Id.*

[7]*State v. Richards*, 87 Wn. App. 285, 288, 941 P.2d 710 (1997).

[8]*Id.*

[9]Clerk's Papers at 8.

[10]*Id.*

[11]*Id.*

[12]Clerk's Papers at 27.

[13]*Richards*, 87 Wn. App. at 288.

[14]*Id.* The record does not contain the search warrant. Neither party raises a question concerning its content or purpose.

[15]Clerk's Papers at 8.

[16]*Id.* at 17.

[17]*Id.*

voluntarily agreed to speak with Detective Erickson.[18] Petitioner subsequently directed the police officers to cocaine he had hidden in his apartment.[19] In addition to various drug packaging and paraphernalia, police officers recovered seven bindles of cocaine.[20] Also discovered in the apartment were other controlled substances Petitioner claimed were for his personal use.[21]

On August 20, 1991 the King County Prosecuting Attorney filed an Amended Information in the King County Superior Court charging Petitioner with one count of possession with intent to manufacture or deliver cocaine.[22] The charge for Violation of the Uniform Controlled Substances Act read:

> That the defendant GRANT MYRON RICHARDS in King County, Washington on or about April 4, 1990, unlawfully and feloniously did possess with intent to manufacture or deliver cocaine, a controlled substance and narcotic drug, and did know it was a controlled substance.[23]

Petitioner made a motion to suppress the cocaine and other evidence, claiming Detective Erickson failed to comply with the "knock and wait" rule before entering his apartment to execute the search warrant.[24] The motion was denied prior to trial on August 21, 1991.[25] The Honorable Nancy Ann Holman then in findings of fact and conclusions of law concluded the police officers had complied with RCW 10.31.040:

> The purpose of the knock and announce rule is different in

---

[18]Clerk's Papers at 23.

[19]*Id.* at 17.

[20]*Id.* at 17-18.

[21]*Id.* at 18-19.

[22]*Id.* at 5.

[23]*Id.*

[24]*Id.* at 7-10.

[25]*Id.*

cases involving closed doors and open doors. In this case, there is an area of visibility which is not present in a closed door situation. The open glass door gave the defendant an opportunity to see the police officers. Thus their presence was known to him prior to their entry. . . . As he was entering the apartment, and after his presence was made known, Detective Erickson announced "Police, search warrant," which informed the defendant of their presence, identity and purpose. . . . Under the circumstances presented, the officers did not need to wait for defendant to permit or deny entrance into the apartment. The context in which this happened required the police to act quickly.[26]

After a trial on stipulated facts on August 21, 1991, in which Petitioner Richards was found "guilty" of the crime of violation of the Uniform Controlled Substances Act as charged,[27] he appealed to the Court of Appeals, Division One.[28] The Court of Appeals, in an unpublished opinion,[29] remanded the case to the trial court for clarification of its findings on the question whether Detective Erickson had said "Police. We have a search warrant" before or after entering Petitioner's apartment.[30] This Court denied review of that decision of the Court of Appeals.[31]

On remand, the trial court, the Honorable Nancy Ann Holman, on October 4, 1991 entered supplemental findings of fact and conclusions of law confirming that Detective Erickson announced his presence, identity and purpose before entering Petitioner's apartment:

The purpose of the knock and announce rule is different in cases involving closed doors and open doors. In this case, there is an area of visibility which is not present in a closed door sit-

[26]*Id.* at 7-10.

[27]*Id.* at 11.

[28]*Id.* at 24.

[29]*Id.* at 26-32. (*State v. Richards*, 75 Wn. App. 1001 (1994), *review denied*, 126 Wn.2d 1002 (1995)).

[30]*Id.* at 31.

[31]126 Wn.2d 1002.

uation. The open glass door gave the defendant an opportunity to see the police officers. Thus their presence was known to him prior to their entry. . . . *Prior to entering the apartment, and after his presence was made known,* Detective Erickson announced "Police, search warrant," which informed the defendant of their presence, identity, and purpose. . . . *The officers entered immediately after announcing their presence and purpose. Since the defendant turned around and made eye contact with them prior to their entry, he knew who they were and why they were there. Thus they did not need to wait for him to permit or deny entrance into the apartment.* The context in which this happened required the police to act quickly.[32]

After a hearing on Petitioner Richards' second appeal, the Court of Appeals again affirmed his conviction on August 11, 1997.[33] In a published decision the Court of Appeals, Acting Chief Judge Faye Kennedy writing, agreed with the trial court's conclusion and stated that "waiting for [Petitioner] Richards to grant or deny entry under the circumstances of this case would have served none of the purposes of the knock and announce rule."[34]

Petitioner then sought review by this Court, which was granted on March 4, 1998.

## DISCUSSION

Petitioner Grant Myron Richards contends the plain-clothes police officers, while attempting to serve a search warrant upon his residence, violated the "knock and wait" rule (1) by not waiting to be granted or denied entry by the occupant, Petitioner, as required by the "knock and wait" rule codified in RCW 10.31.040;[35] (2) by initiating a ruse to gain entry;[36] and (3) by not meeting the requisite "virtual

---

[32]Clerk's Papers at 36-39 (emphasis added).

[33]*State v. Richards*, 87 Wn. App. 285, 288, 941 P.2d 710 (1997).

[34]*Id.* at 293.

[35]Pet. for Review at 1.

[36]*Id.*

certainty" standard requiring that occupants of premises be aware of the identity and purpose of plainclothes police officers executing a search warrant.[37]

The "knock and wait" rule in RCW 10.31.040 states:

> To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance.[38]

■ The federal statute containing the "knock and wait" rule, 18 U.S.C. § 3109, is substantially similar to RCW 10.31.040.[39] The rule stated in the Washington statute is applicable not only to searches and arrests when force is used to gain entry, but at any time police officers enter premises without valid permission.[40]

■ This Court in *State v. Coyle* concluded that, in order to comply with the "knock and wait" rule, police officers prior to a nonconsensual entry must (1) announce their identity, (2) announce their purpose, (3) demand admittance, (4) announce the purpose of their demand, and (5) be explicitly or implicitly denied admittance. Under *Coyle* these requirements must be satisfied even if the officers enter through an open door.[41] In that case this Court determined police officers did not comply with the requirements of RCW 10.31.040. The facts in *Coyle* are distinguishable from the facts in this case. In opinions from the United States Court of Appeals for the Ninth Circuit, the "knock and wait" rule has been interpreted to include only the requirement that prior to nonconsensual entry police

[37]*Id.*

[38]RCW 10.31.040.

[39]18 U.S.C. § 3109 states: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

[40]*State v. Coyle*, 95 Wn.2d 1, 5, 621 P.2d 1256 (1980).

[41]*Id.* at 6.

officers must (1) knock, (2) announce their identity, (3) announce their purpose, and (4) allow a brief waiting period before entering. This is often linked to whether the officers are refused admittance.[42]

The language of RCW 10.31.040 is consistent with the less demanding interpretation of the "knock and wait" rule announced by the United States Court of Appeals for the Ninth Circuit in decisions relating to 18 U.S.C. § 3109; and is consistent with recent decisions by the Washington Court of Appeals relating to RCW 10.31.040. But this Court in *Coyle* provided a more expansive interpretation of the statute. The requirement of a demand for admittance and an explicit or implicit denial of admittance have been merged into a "waiting period," often linked to whether the police officers are refused admittance.

The United States Court of Appeals for the Ninth Circuit in *United States v. Bustamante-Gamez* stated:

> [B]oth the cases and the literature have concentrated solely upon the "announcement" portion of section 3109; little attention has been devoted to the issue of when "refusal of admittance" is necessary. Such case law as there is, however, suggests that this requirement, like the rule of announcement in general, is a flexible one which is not to be applied mechanically. *See generally* United States v. Pratter, 7 Cir. 1972, 465 F.2d 227, 231-233 nn.10-13 (collecting cases). For example, in McClure v. United States, 9 Cir., 1964, 332 F.2d 19, we held that a refusal of admittance is generally to be implied, and that the test is whether "the circumstances were such as would convince a reasonable man that permission to enter had been refused." *Id.* at 22. . . .
>
> . . . .

---

[42]Cases from the United States Court of Appeals for the Ninth Circuit interpreting the "knock and wait" rule include: *United States v. Ramirez*, 91 F.3d 1297, 1300 (9th Cir. 1996); *United States v. Bustamante-Gamez*, 488 F.2d 4, 10-11 (9th Cir. 1973), *cert. denied*, 416 U.S. 970, 94 S. Ct. 1993, 40 L. Ed. 2d 559 (1974).

Recent Washington Court of Appeals cases interpreting the "knock and wait" rule include: *State v. Alldredge*, 73 Wn. App. 171, 868 P.2d 183 (1994); *State v. Lehman*, 40 Wn. App. 400, 404, 698 P.2d 606, *review denied*, 104 Wn.2d 1009 (1985); *State v. Schmidt*, 48 Wn. App. 639, 643, 740 P.2d 351, *review denied*, 109 Wn.2d 1013 (1987); *State v. Hilliard*, 18 Wn. App. 614, 616, 570 P.2d 160 (1977).

> The simple fact is that a homeowner has no right to prevent officers armed with a warrant or proper grounds to make a warrantless entry from entering his home. At the most, the "refusal of admittance" requirement gives him a few moments to decide whether or not he will open the door himself. *See, e.g.,* United States v. Woodring, 9 Cir., 1971, 444 F.2d 749 (permitting entry after a one-minute wait following announcement).[43]

This Court in *Coyle* concluded that police officers must not only announce their identity and purpose, but must also demand admittance and be explicitly or implicitly denied admittance. Since *Coyle*, the Washington Court of Appeals, Division One, has at least in one case in 1985 determined that a statement by a police officer identified as such and who announces that the officer possesses a search warrant constitutes an implicit demand for admission into the residence.[44]

The *announcement* portion of RCW 10.031.040 is not at issue in this case because the supplemental findings of the trial court confirmed that the two lead detectives announced their identity and purpose before entering Petitioner's apartment.[45] But the *waiting period* is at issue. Petitioner argues that the waiting period could not end until the police officers requested permission to enter his residence and the request was either granted or denied. The remedy for an unexcused failure to comply with the "knock and wait" rule is suppression of the evidence obtained after the entry.[46]

In interpreting RCW 10.31.040, this Court adheres to the purposes for which the statute was enacted.[47] To

---

[43]*United States v. Bustamante-Gamez*, 488 F.2d at 10-11.

[44]*See State v. Lehman*, 40 Wn. App. at 404.

[45]Clerk's Papers at 36-39.

[46]*Coyle*, 95 Wn.2d at 14.

[47]*Id.* at 5.

determine whether police officers have complied with the "knock and wait" rule, the Court must decide whether prior to the nonconsensual entry the officers complied with the purposes of the rule, which are (1) to reduce the potential for violence to both occupants and police arising from an unannounced entry; (2) to prevent unnecessary destruction of property; and (3) to protect the occupants' right to privacy.[48] Strict compliance with the rule is required unless the State can demonstrate that one of the two exceptions to the rule applies: exigent circumstances or futility of compliance.[49]

Petitioner Richards argues that the police officers did not comply with two of the "knock and wait" rule requirements announced by this Court in *Coyle*. He claims there was no demand by the police officers to be admitted to his apartment and he had no opportunity to grant or deny them admittance. Respondent State counters that Detective Erickson's announcement, "Hey, Grant, Police. We have a search warrant" provided sufficient notice of the officers' identity and purpose and therefore the officers did not need to specifically request entry or be granted or denied admittance. Under this Court's decision in *Coyle*, a court must examine whether police officers' actions effectuated the purpose of the "knock and wait" rule in determining whether a demand for entry and a grant or denial of admittance are required.

In this case, the Court of Appeals concluded that the police officers were not required to wait for an implicit or explicit refusal of admittance because all purposes of the rule had been satisfied before they entered.[50] The supplemental findings of the trial court confirmed that the detectives announced their identity and purpose before entering Peti-

---

[48]*See Coyle*, 95 Wn.2d at 5.

[49]*Id.* at 9-11.

[50]*Richards*, 87 Wn. App. at 288.

tioner's apartment.[51] Detective Erickson took adequate steps to prevent violence which might have arisen from an unannounced entry. His statement announced an intention to enter the apartment so that their entry would not surprise the occupants. There was no evidence in this case that the occupants feared an intruder or there was a likelihood the occupants would resist entrance to the apartment by the police officers.[52]

■■ Failure to demand admittance did not increase the likelihood of physical destruction of property because the sliding glass door was open and only a sliding screen door remained in a closed position. Petitioner's expectation of privacy was significantly reduced because the police officers had a valid search warrant and could see him through the open sliding glass door with curtains open. Once the officers have satisfied the probable cause and warrant requirements, the occupant's right of privacy is limited because police are authorized to enter the premises with or without consent of the occupant.[53]

In this case, the police officers in clear view observed Petitioner adjusting a video cassette recorder. As the officers proceeded to enter the apartment, Petitioner was afforded reasonable warning by Detective Erickson's immediate prior and almost simultaneous announcement of Petitioner's name and the officers' identity and purpose. Petitioner's privacy was not impermissibly disturbed.[54]

■■ Entry upon private property to execute a search warrant must be lawful. A lawful entry, being conditioned upon an announcement of identity and purpose and a demand for admittance, must be "reasonable" and subject

---

[51]Clerk's Papers at 36-39.

[52]Id. at 17-18 (Petitioner Richards submitted peaceably to the police officers and voluntarily disclosed the location of seven bindles of cocaine).

[53]State v. Myers, 102 Wn.2d 548, 554-55, 689 P.2d 38 (1984).

[54]State v. Rose, 128 Wn.2d 388, 394, 909 P.2d 280 (1996) (there is no expectation of privacy in what can be seen through uncurtained windows) (citing State v. Manly, 85 Wn.2d 120, 124, 530 P.2d 306, cert. denied, 423 U.S. 855, 96 S. Ct. 104, 46 L. Ed. 2d 81 (1975)).

to certain generally recognized exceptions.[55] Whether an officer waited a reasonable time before entering a residence is a factual determination to be made by the trial court and depends upon the circumstances of the case.[56]

■■ ■■ In this case, the detectives acted reasonably when they immediately entered Petitioner's apartment after announcing their identity and purpose. Shouting of Petitioner's name by Detective Erickson was equivalent to a knock because the detectives had a clear and unobstructed view of the apartment's occupants through the sliding screen door. Yelling "Hey, Grant" to get Petitioner's attention was as good a notice as a knock on the door would have been. When Petitioner turned to face the detectives standing in full view at his open glass door and made eye contact with them, Detective Erickson immediately identified himself and the other detective as police officers and announced the purpose of their entry by stating, "Police. We have a search warrant." The announcement of a search warrant constituted an implicit demand for entry.[57]

■■ Although the detectives did not wait for Petitioner to grant or deny them permission to enter the apartment before sliding open the screen door and entering the apartment, waiting would have served none of the purposes of the "knock and wait" rule. An occupant, confronted with a valid search warrant, has no right to refuse admission to police officers because no interest served by the "knock and wait" rule would be furthered by requiring the officers to stand at an open sliding glass doorway for a few seconds to determine whether the occupant would permit their entry.[58]

Petitioner claims the detectives' entry into his apartment

---

[55]*State v. Young*, 76 Wn.2d 212, 215, 455 P.2d 595 (1969).

[56]*Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S. Ct. 1416, 1421-22, 137 L. Ed. 2d 615 (1997).

[57]*See State v. Schmidt*, 48 Wn. App. 639, 642, 740 P.2d 351, *review denied*, 109 Wn.2d 1013 (1987); *Lehman*, 40 Wn. App. at 404.

[58]*See United States v. Kemp*, 12 F.3d 1140, 1142 (D.C. Cir. 1994).

violated the first purpose of the "knock and wait" rule, preventing violence, because the detectives intended to gain admittance to Petitioner's residence by the ruse of disguising themselves as drug buyers.[59] According to Petitioner, the physical appearance of the detectives with long hair and beards, jeans and T-shirts, lacking any visible identification of their office, appearing suddenly at Petitioner's screen door with guns drawn, increased the likelihood that Petitioner would react in a violent manner because he was under attack.[60] In an attempt to draw similarities between this case and *State v. Ellis*,[61] Petitioner relies on the fact the uniformed officers were not immediately visible to him and because the detectives' capacity as legitimate law enforcement officers was not readily identifiable because of their clothing and physical appearance.[62]

In *Ellis*, plainclothes officers executing a valid search warrant at 4:00 A.M. initially tried to gain entry by the ruse of claiming to be an acquaintance of the defendant named "Louie."[63] The Court of Appeals in this case, referring to *Ellis*, stated:

> When the defendant [in *Ellis*] realized that he had been tricked into opening the door, he tried to shut it again, but the officers forced the door open while simultaneously announcing their true identity. The *Ellis* court observed that because the uniformed officers in that case were not reasonably visible to one looking out the door, because the plain-clothes detective who announced the officers' true identity did not clearly display his badge, and because the officers forced entry while simultaneously announcing their true identity and purpose, the defendant was faced with a situation resembling that in *State v. Bresolin*, 13 Wn. App. 386, 534 P.2d 1394 (1975), in which robbers entered a house falsely claiming to be federal

---

[59]Pet. for Review at 11. Petitioner has not established that the physical appearance of the detectives constituted a disguise as "drug buyers."

[60]*Id.*

[61]*State v. Ellis*, 21 Wn. App. 123, 584 P.2d 428 (1978).

[62]Pet. for Review at 11.

[63]*Ellis*, 21 Wn. App. at 125.

agents. *Ellis*, 21 Wn. App. at 127. The *Ellis* court noted that the circumstances of the confrontation made it understandable that the defendant, upon discovering that he had been tricked into opening the door, would instinctively close the door in an effort to protect himself. *Id.* The *Ellis* court observed that forceful entry simultaneous with identification is dangerous when the only visible officers are in plain clothes, especially during late night hours. *Ellis*, 21 Wn. App. at 127-28.[64]

Petitioner's case is distinguishable from *Ellis*. As the United States Supreme Court has stated, each case must be evaluated on its own facts.[65] In this case, the officers did not attempt to enter Petitioner's apartment by a ruse, as in *Ellis*.[66] Although there was some indication of an intended ruse presented to the Court of Appeals in the first hearing,[67] the intended ruse was abandoned prior to its initiation. In addition, a ruse is outlawed only if force or violence is used.[68] In this case there was not only no ruse, but there was no use of force or violence.

The defendant in *Ellis* had reason not to believe the announcement of the true identity of the police officers in their undercover attire because the officers had already attempted to get him to open his door by claiming to be an acquaintance. In this case Petitioner Richards had no reason not to believe Detective Erickson's announcement of identity and purpose. Although the detectives' attire and physical appearance in this case and in *Ellis* did not lend to immediate realization of their true identity as police officers, the detectives in this case did in fact immediately inform Petitioner of their true identity and purpose mo-

---

[64]*Richards*, 87 Wn. App. at 291.

[65]*See Richards*, 520 U.S. at 394.

[66]*Ellis*, 21 Wn. App. at 125-29 (Entry by ruse is permissible if no force is used.).

[67]Clerk's Papers at 27. (Court of Appeals, Division One, unpublished opinion in the first appeal is noted at *State v. Richards*, 75 Wn. App. 1001 (1994), *review denied*, 126 Wn.2d 1002 (1995)).

[68]*Ellis*, 21 Wn. App. at 125.

ments before entering his apartment. The purposes of the "knock and wait" rule were satisfied in this case at the point of entry through the open sliding glass door. The detectives were not then required to wait for an answer. Petitioner knew the police officers were present prior to their entry because Detective Erickson shouted through the open sliding glass doorway the name "Grant" to get Petitioner's attention and immediately identified himself and Detective Herst as police officers who were there with a search warrant.

Petitioner argues that the opinion of the Court of Appeals in this case is in conflict with *State v. Coyle*.[69] He claims that *Coyle* holds that noncompliance with the "knock and wait" rule may not be excused as a useless act unless the police officers are "virtually certain" the occupants are aware of their presence and purpose prior to their entry.[70] Petitioner asserts the officers could not be certain that he knew they were in fact police officers.

Petitioner's arguments based on *Coyle* are not persuasive. The *Coyle* decision applies to "no-knock" entry where there has been no compliance with the "knock and wait" rule. Under the facts of this case, Petitioner Richards saw and heard the detectives announce their identity and purpose immediately before they entered. Stricter compliance with the "knock and wait" rule was not required because the detectives were "virtually certain" Petitioner was aware of their presence and purpose.[71] Petitioner's reliance on the "virtual certainty" standard in *Coyle* is also not persuasive because recent United States Supreme Court decisions have concluded that "virtual certainty" is not the standard for entry of premises under the Fourth Amendment. In this case the Court of Appeals concluded that the "knock and wait" rule is a flexible rule that gives way when police officers have a reasonable belief that strict compliance would

---

[69]95 Wn.2d 1, 621 P.2d 1256 (1980).

[70]Pet. for Review at 10.

[71]*Coyle*, 95 Wn.2d at 11.

be futile.[72] There was sufficient reason to believe waiting would be futile.

It is logical to conclude under the facts of this case that the detectives reasonably believed Petitioner Richards knew they were police officers and that they entered his apartment to serve a search warrant.

## SUMMARY AND CONCLUSIONS

Service of a search warrant implicitly constitutes demand for admission to premises. To wait for grant or denial of admission after an occupant has been made aware of a police officer's presence and purpose would serve no logical purpose. The police officer is already authorized by the search warrant to enter the premises without permission from the occupant.

In this case, the purposes of the "knock and wait" rule, RCW 10.31.040, were satisfied because there was no unannounced entry, there was no danger of violence or property damage, and entry through an open sliding glass door by moving a sliding screen door did not invade the occupant's privacy because the police officers gave a reasonable warning identifying themselves and announcing their purpose. Under these circumstances, it would serve no purpose to require the officers to wait for a response to a demand or request for admittance.

The police officers in this case complied with the requirements of the "knock and wait" rule stated in RCW 10.31.040. The Court of Appeals correctly determined the trial court did not commit error in denying Petitioner's motion to suppress cocaine found in his apartment by police officers who entered with a search warrant after announcing their identity and purpose.

We affirm the decision of the Court of Appeals, Division One, which affirmed a decision of the King County Superior Court denying Petitioner Grant Myron Richards' motion to

---

[72]*Richards*, 520 U.S. 385.

suppress evidence (cocaine) in which he claimed violation by police officers of the "knock and wait" rule.

DURHAM, C.J., and DOLLIVER, GUY, and TALMADGE, JJ., concur.

ALEXANDER, J. (dissenting) — At the outset of its opinion, the majority identifies the issue before us as whether plainclothes police officers executing a search warrant violated Washington's knock and announce statute, RCW 10.31.040, by entering an occupant's apartment after announcing their presence, identity, and purpose, but without waiting for the occupant to grant or deny them entry into the apartment. Majority op. at 364. It answers that question by concluding that the statute was not violated because waiting for the occupant of the apartment to grant or deny entry in such circumstances would "serve no logical purpose." Majority op. at 378. It, therefore, affirms the decision of the Court of Appeals upholding the trial court's denial of Richards' motion to suppress the fruits of the search.

I submit that the majority not only decides the case incorrectly, it incorrectly states the issue. In my view, the pertinent question is whether plainclothes police officers executing a search warrant violated RCW 10.31.040 when they entered an apartment as, or immediately after, they announced their presence, identity, and purpose and without pausing sufficiently so that they could be "virtually certain" that the occupant of the apartment was aware of their presence, identity, and purpose prior to their entry. To that question, I would answer yes and, thus, would reverse the Court of Appeals. Accordingly, I dissent.

In *State v. Coyle*, 95 Wn.2d 1, 621 P.2d 1256 (1980), this court held in a unanimous opinion that in order for the police to comply with the provisions of RCW 10.31.040, they must, prior to any nonconsensual entry into a dwelling house, announce their identity, demand admittance, announce the purpose of their demand, and be explicitly or implicitly denied admittance. *See Coyle*, 95 Wn.2d at 6.

Strict compliance with the statute is not, however, necessary where exigent circumstances are present or where compliance with the statute is a useless gesture. *See Coyle*, 95 Wn.2d at 9-11. Because there has been no suggestion by the State that any exigent circumstances were present that justified noncompliance with the statute, the focus of this case has properly been on whether or not compliance with the statute was a useless gesture and, therefore, unnecessary.

In *Coyle*, we indicated that the useless gesture exception to the requirements of RCW 10.31.040 is applicable only in instances where it is shown that the police are "virtually certain" that the occupant is aware of their presence, identity, and purpose *prior to their entry*. *See Coyle*, 95 Wn.2d at 11. The majority concludes that the police officers were "virtually certain" that Richards was aware of their presence and purpose before they entered his apartment. *See* Majority op. at 377. This conclusion is difficult to understand in light of the trial court's failure to make a specific finding that the police were "virtually certain" that Richards had the requisite awareness.[73] Furthermore, such a finding, even if it had been made, finds no support in the evidence that was before the trial court. The record reveals, rather, that when the officers of the narcotics task force went to Richards' apartment they not only did not knock and request permission to enter, they presented themselves in a way that would not convey to the ordinary person that they were officers of the law who wished to execute a search warrant. Indeed, it is unrefuted that when Officers Erickson and Herst approached Richards' sliding screen door, their guns were drawn and they were dressed in jeans and T-shirts. The officers each had long hair and beards and neither displayed a police badge. This is not the stereotypi-

---

[73]The closest the trial court came to making such a finding is its finding of fact III in which it indicates that one of the officers announced his identity and purpose before entering.

cal vision of a police officer.[74] One of the detectives, Peter Erickson, observed Richards from a vantage point outside the sliding screen door and said, "Hey, Grant," an act which apparently caused Richards to turn around and look at him. Clerk's Papers (CP) at 26. There was no indication, however, that this statement conveyed to Richards that Erickson was a police officer bent on serving a search warrant.

Although Erickson did—as, or immediately before, he opened the screen door and walked into Richards' apartment—say, "Police, search warrant," CP at 26, it can hardly be said that the authority, purpose, and identity of the officers who entered the dwelling were conveyed to Richards before they entered, much less that the officers could be "virtually certain" that Richards possessed such an awareness before the entry occurred.

As its secondary, but more fundamental, basis for upholding the search here, the majority seemingly abandons the "virtual certainty" test we set forth in *Coyle*. In doing so it says that "[p]etitioner's reliance on the 'virtual certainty' standard in *Coyle* is also not persuasive because recent United States Supreme Court decisions have concluded that 'virtual certainty' is not the standard for entry of premises under the Fourth Amendment." Majority op. at 377. If this statement is meant to suggest that the majority is overruling *Coyle*, it should say so. More importantly, though, there is absolutely no basis for the court to forsake our holding in *Coyle*. I reach that decision because the decision of the United States Supreme Court upon which the majority purports to rely, *Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416, 137 L. Ed. 2d 615 (1997), simply does not compel a departure from the standard we set forth in *Coyle*.

---

[74]I am not at all critical of the fact that the police officers were attired in this way. Obviously, a police officer's duties may require the officer to wear a variety of clothing if he or she is engaged in undercover activities. While an officer of the law is no less an officer incognito, it is reasonable to assume that the attire is worn so that persons coming into contact with the undercover officer will not be aware that the person is a police officer.

In *Coyle* we were merely called upon to interpret the requirements of a Washington statute, RCW 10.31.040. As the majority notes, we chose to expansively interpret its provisions. Majority op. at 370. In *Richards*, on the other hand, the United States Supreme Court was reviewing a decision of the Wisconsin Supreme Court in which the latter court had held, in effect, that the police of that state are never required to knock and announce their presence when executing a search warrant in a felony drug case. Although the Supreme Court rejected Wisconsin's blanket exemption to the common law knock and announce requirement, it concluded that the Fourth Amendment was not offended by a "no knock" entry in cases where the police had a "reasonable suspicion" that knocking and announcing would be dangerous or futile. *See Richards*, 520 U.S. at 394.

The fact that the United States Supreme Court has, in a Fourth Amendment context, given its imprimatur to this less rigorous standard for judging the validity of a no-knock entry, does not mean that a state cannot establish a standard that is more rigorous in its protection of individual rights. Unfortunately, the majority's decision—which, in my view, goes a long way toward rendering Washington's long-standing knock and announce statute[75] a nullity in many factual circumstances—is far-reaching. The majority essentially concludes, without citation to authority, that a state legislature, by statute, cannot grant its citizens rights greater than the threshold rights provided by the United States Constitution. Such a decision is not only contrary to the principle of federalism, but it runs counter to the many cases in which we have held that Washington has afforded its citizens greater rights under its state constitution than its citizens would have under the United States Constitution. *See, e.g., State v. Boland*, 115 Wn.2d 571, 800 P.2d 1112 (1990); *State v. Young*, 123 Wn.2d 173, 867 P.2d 593 (1994). I see no reason why the same principle does not apply to a statutory recognition of privacy rights.

---

[75]RCW 10.31.040 was first enacted in 1881. CODE OF 1881 § 1170.

In the final analysis the majority's decision drastically reduces the protections provided by RCW 10.31.040. I am not suggesting that police officers who have announced their identity and purpose before entry must wait to enter until they have been explicitly or implicitly denied entry if to do so would be a useless gesture, I am simply saying that under RCW 10.31.040, as we have construed it in *Coyle*, the officers must be "virtually certain" that their identity and purpose is known to the occupant before they enter. In instances such as we have here, where the officers bore no visible indication of their authority and only announced their purpose and identity either as they entered, or immediately prior to their entry, it cannot be said there was such certainty. I, therefore, would reverse the Court of Appeals.

JOHNSON, MADSEN, and SANDERS, JJ., concur with ALEXANDER, J.