[No. 27493-7-I.    Division One.    July 6, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. IGNACIO GARCIA-HERNANDEZ, *Appellant*.

*Antonio Salazar* and *Salazar Law Offices,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Robin Fox, Deputy,* for respondent.

AGID, J. — Ignacio Garcia-Hernandez appeals his conviction on stipulated facts of possession of a controlled substance with intent to deliver, in violation of RCW 69.50-.401(a). He challenges the trial court's denial of his motion to suppress evidence seized pursuant to a search of his apartment, on the basis that the police violated the "knock and announce" rule, codified in RCW 10.31.040. We affirm.

On July 14, 1990, a Seattle Police narcotics team served a search warrant on defendant Garcia-Hernandez. Sergeant Ed Caalim testified that the target residence was located in a multistory apartment building with a communal front porch. Each apartment's front entrance was located off the porch on the main level. The narcotics team approached the apartment building around 1:30 a.m. It was a hot summer night, and there were about 10 people on the porch. The detectives pulled up to the building in plain cars and parked in front. They were wearing jackets with large letters on the front and back identifying them as "Police", and baseball caps that also read "Police". As the detectives began to exit their cars, Sergeant Caalim heard "someone yelling something" and saw about four people scramble off the porch into the apartments. Sergeant Caalim did not recall seeing anyone run into the target residence, apartment A.

Afraid that someone on the porch might alert the occupants of apartment A that the police were approaching, Sergeant Caalim directed some of the officers to detain the remaining people on the porch, and he and another detective approached apartment A. The front door to the apartment was ajar. Sergeant Caalim pushed it open further, and twice yelled, "Seattle Police, search warrant." The officer waited about 5 seconds after identifying himself, and then entered the apartment. To Sergeant Caalim's left was a dark living room, to his right, a lighted hallway. The detectives went down the hallway to a bedroom. The door was slightly ajar. Sergeant Caalim pushed the door open and again yelled "police" in English and in Spanish. He found the defendant sitting on his bed in the room, holding a plate.

Garcia-Hernandez testified that on July 14, 1990, about 1 a.m., he was sitting on his bed eating when a police officer came through the bedroom door and pointed a gun at him. Before being confronted by the police, he had heard no one yelling and no knock on the door.

After hearing the testimony, the trial court ruled that the police substantially complied with the "knock and announce"

rule, codified in RCW 10.31.040. The court therefore denied the defendant's motion to suppress evidence of cocaine found during the detectives' search of the apartment. This appeal followed.

The "knock and announce" rule, codified in RCW 10.31-.040, provides:

> To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance.

The statute applies whenever the police seek to enter the premises without the occupant's consent, whether their purpose is to make an arrest or execute a search warrant. *State v. Myers*, 102 Wn.2d 548, 552, 689 P.2d 38 (1984); *State v. Shelly*, 58 Wn. App. 908, 910, 795 P.2d 187 (1990), *review denied*, 116 Wn.2d 1015 (1991). The statute applies equally to forced and nonforced entries. *State v. Coyle*, 95 Wn.2d 1, 6, 621 P.2d 1256 (1980); *State v. Amezola*, 49 Wn. App. 78, 84, 741 P.2d 1024 (1987).

Compliance with the statute and the Fourth Amendment requires that the police, before entering an individual's home without his or her consent, identify themselves, announce their purpose, and demand admittance. In addition, the officers must be explicitly or implicitly denied admittance.[1] *Coyle*, 95 Wn.2d at 6; *Amezola*, 49 Wn. App. at 84. The police need not wait for an actual refusal following their announcement; denial of admittance may be implied from the occupant's lack of response. *State v. Schmidt*, 48 Wn. App. 639, 642, 740 P.2d 351, *review denied*, 109 Wn.2d

---

[1] A denial of admittance is not required, however, when waiting for a response would be a "useless gesture". Compliance with the statute would be a "useless gesture" in situations where the police demonstrate with virtual certainty that the occupants were aware of the officers' presence, identity, and purpose before the police entered the premises. *Coyle*, 95 Wn.2d at 11; *Shelly*, 58 Wn. App. at 911. Here, the State does not contend, and the evidence does not support, that the "useless gesture" exception applies in this case to excuse compliance with the statute. Further, the trial court found, and the State concedes, that the requirements for showing exigent circumstances were not demonstrated here.

1013 (1987); *State v. Jones*, 15 Wn. App. 165, 167, 547 P.2d 906, *review denied*, 87 Wn.2d 1005 (1976).

In interpreting the statute, the courts examine whether the purposes for which it was enacted were fostered by the police procedure in question. *Coyle*, 95 Wn.2d at 5. The purposes of the "knock and announce" rule are to: (1) reduce the potential for violence to both police and occupants arising from an unannounced entry; (2) prevent unnecessary property damage; and (3) protect an occupant's right to privacy. *Myers*, 102 Wn.2d at 554; *Coyle*, 95 Wn.2d at 5.

The defendant argues that the police failed to comply with the "knock and announce" rule because, while they may have identified themselves and stated their purpose, they did not give him a sufficient opportunity to grant or deny them admittance. In executing a search warrant, police officers must act reasonably. *Schmidt*, 48 Wn. App. at 644. Whether the officer waited a reasonable amount of time before entering the residence is a factual determination to be made primarily by the trial court and depends on the circumstances of each case. *Amezola*, 49 Wn. App. at 84; *Schmidt*, 48 Wn. App. at 644; *Jones*, 15 Wn. App. at 167. The trial court's finding of reasonableness will be upheld if it is supported by substantial evidence. *Jones*, 15 Wn. App. at 167.

Examining the police procedure used in this case in light of the purposes of the "knock and announce" rule, we agree with the trial court's conclusion that the officers substantially complied with the statute's requirements. First, Sergeant Caalim announced his identity and purpose before entering the defendant's apartment, and again yelled "police" before entering the bedroom. By twice announcing his identity as a police officer, Sergeant Caalim took sufficient steps to reduce the potential for violence arising from an unannounced entry. Second, because the apartment door was open, the destruction of property associated with a forced entry was not a concern here. Third, the fact that the officers had a valid search warrant significantly reduced the defendant's expectation of privacy. When the police have

satisfied the Fourth Amendment's probable cause and warrant requirements, the occupant's right of privacy is severely limited because the police then have authority to enter the home regardless of the occupant's wishes.[2] *Myers*, 102 Wn.2d at 554-55; *see also State v. Lehman*, 40 Wn. App. 400, 405, 698 P.2d 606 (protection of the right of privacy requires only that the police give a reasonable warning by identifying themselves and announcing their purpose), *review denied*, 104 Wn.2d 1009 (1985); *accord, Schmidt*, 48 Wn. App. at 643.

In addition, we believe that, under the circumstances of this case, the 5-second delay was reasonable. In *Schmidt*, the police obtained a search warrant authorizing a search of the defendant's residence, garage, and shed for methamphetamine, and the defendant's person. As the officers approached the property, dogs began barking. The officers knocked twice on the shed door which was slightly ajar, and yelled "Sheriff's Office. Search Warrant." They heard people inside and smelled what they believed was methamphetamine. After the officers knocked, the premises became very quiet. The officers waited only 3 seconds after their announcement and pushed in the door. In the course of their search, they discovered a methamphetamine lab inside the shed and a loaded .25-caliber rifle hanging on the inside of the door. They also found two people in the shed and one person in the garage which was attached to the shed. *Schmidt*, 48 Wn. App. at 640-41.

The *Schmidt* court determined that the officers' delay of 3 seconds after they knocked and announced, and before they entered, was reasonable. The court observed that the barking dogs may have alerted the occupants to the officers' approach, and that the occupants became very quiet after the knock and announcement, thus indicating that they

---

[2]However, when the officers have not obtained a search warrant and they enter an individual's residence for the purpose of search or arrest, there is a significantly greater possibility that the intrusion on the individual's privacy is unjustified. Had the police entered the defendant's home without a warrant, the result reached in this case might very well be different.

heard it. Further, the police had reason to believe the defendant might be armed and dangerous, that the drug lab could have been destroyed, and that the shed was small enough that it would have taken only a very short time for the occupants to respond to the officers' knock. *Schmidt*, 48 Wn. App. at 646.

Here, as in *Schmidt*, the officers announced their identity and purpose in compliance with the statute. Further, just as the barking dogs in *Schmidt* may have alerted the occupants to the officers' approach, the police here were justified in suspecting that the commotion on the porch in response to the officers' approach to the apartment building may have alerted the defendant to their presence. Further, even though Sergeant Caalim did not see anyone go into the defendant's apartment, his concern that someone on the porch may have warned the defendant that police were approaching was reasonable given the number of people on the porch and the flurry of activity that ensued upon the officers' approach. In addition, had the police waited longer, they would have risked the possibility that the drugs would be destroyed. Finally, the fact that the apartment door was open indicated that the apartment was occupied and that it was unlikely that the occupants were asleep. This supports the inference that the defendant heard the officer's announcement and did not respond. Under these circumstances, we conclude that the 5-second delay was reasonable, and that the defendant's failure to respond during that time was an implicit denial of admission.

Affirmed.

SCHOLFIELD and FORREST, JJ., concur.