130 P.3d 1166

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Martha RAMOS, Defendant-Appellant.**

No. 30662.

Court of Appeals of Idaho.

Dec. 19, 2005.

Review Denied March 22, 2006.

Molly J. Huskey, State Appellate Public Defender; Heather M. Carlson, Deputy Appellate Public Defender, Boise, for appellant. Heather M. Carlson argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

PERRY, Chief Judge.

Martha Ramos appeals from her judgment of conviction for possession of a controlled substance with intent to deliver. For the reasons set forth below, we vacate.

## I.

### FACTS AND PROCEDURE

The police received an anonymous phone call alleging a large quantity of marijuana, potentially hundreds of pounds, was stored in Ramos's house. The police acted on this information by conducting an immediate investigation of the residence. Officers approached Ramos's home on July 5, 2003, at 3:00 a.m. with the intent of knocking on the front door and talking with the occupants of the house (commonly referred to as a knock-and-talk). Upon approaching the residence, officers observed several bags of trash on the sidewalk in front of the house. Instead of proceeding with the knock-and-talk, the officers chose to search through the garbage. That investigation revealed additional evidence of drug activity, corroborating the anonymous tip. This information was sufficient to establish probable cause such that a magistrate issued a search warrant for the home. The police arrived at Ramos's home on July 5 at 7:30 a.m. to execute the search warrant.

The SWAT team executing the warrant approached the house only from the front. Officers knocked rapidly on the front door, loudly shouting "Police, search warrant" and then, in Spanish, "Policia." The knocking and shouting took approximately five seconds. The police waited approximately five more seconds, then rammed the door in and entered the home. The residents were sleeping at the time. After the police roused and controlled all occupants of the house, including Ramos, the subsequent search re-

vealed more than twenty-five pounds of marijuana hidden in a closet.

Ramos moved the district court to suppress the evidence on the grounds that the police violated I.C. § 19–4409 and Ramos's rights under Article I, Section 17 of the Idaho Constitution and the Fourth Amendment to the United States Constitution. The district court heard testimony from a police officer experienced in SWAT tactics and police investigation. The officer opined that, in his experience, when a large volume of drugs is allegedly in a residence to be searched, the likelihood of weapons in the home and armed resistance to police entry increases. The district court found that a ten-second delay between the first knock and the forced entry was not enough time for anyone in the home to answer the door. Despite this, the district court held that the quick entry was justified by concern for officer safety and did not violate the Fourth Amendment or I.C. § 19–4409. The district court denied Ramos's motion. Ramos pled guilty to possession of a controlled substance with intent to deliver, I.C. § 37–2732(a), reserving the right to appeal the denial of her suppression motion. Ramos now appeals.

## II.

## ANALYSIS

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

### A. Fourth Amendment

■ Ramos asserts that the police did not substantially comply with the knock-and-announce requirement of the Fourth Amendment because, at the time of the entry into the house, no facts created an exigency such that the police could enter without waiting for Ramos or another occupant to answer the door. As a result, Ramos asserts that her Fourth Amendment rights were violated and that the evidence should have been suppressed pursuant to the exclusionary rule.

We initially note that Ramos appeals the district court's denial of her motion to suppress on the grounds that the police conduct in this case violated an Idaho statute as well as both the Idaho and United States Constitutions. However, she does not claim that Article I, Section 17 of the Idaho Constitution or the knock-and-announce provisions of I.C. § 19–4409 [1] provide any broader protection than that of the Fourth Amendment to the United States Constitution. Therefore, we will analyze this claim under Fourth Amendment jurisprudence.

The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 17, of the Idaho Constitution is virtually identical to the Fourth Amendment, except that "oath or affirmation" is termed "affidavit."

■ The United States Supreme Court has held that the Fourth Amendment incorporates the common law requirement that prior to executing a search warrant the police must knock on the door, announce their identity and authority, and wait a reasonable time for the occupants to respond before entering forcibly. *See United States v.*

1. Idaho Code Section 19–4409 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or any thing therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

*Banks,* 540 U.S. 31, 36, 124 S.Ct. 521, 525, 157 L.Ed.2d 343, 352 (2003); *see also Richards v. Wisconsin,* 520 U.S. 385, 387, 117 S.Ct. 1416, 1418, 137 L.Ed.2d 615, 620 (1997); *Wilson v. Arkansas,* 514 U.S. 927, 934, 115 S.Ct. 1914, 1917-18, 131 L.Ed.2d 976, 982 (1995). However, this rule is not absolute and the Court recognized that, under some circumstances, an unannounced entry was permissible. *See Richards,* 520 U.S. at 387, 117 S.Ct. at 1418, 137 L.Ed.2d at 620. Specific exigencies include threats to officer safety or a likelihood that evidence might be destroyed. *Id.* at 391, 117 S.Ct. at 1420, 137 L.Ed.2d at 622. In order to justify such an entry, the police must have reasonable suspicion that knocking and announcing prior to entry would pose a threat to their safety or inhibit the investigation. *Banks,* 540 U.S. at 36, 124 S.Ct. at 525, 157 L.Ed.2d at 352; *Richards,* 520 U.S. at 394, 117 S.Ct. at 1421, 137 L.Ed.2d at 624. The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *State v. Cerino,* 141 Idaho 736, 738, 117 P.3d 876, 878 (Ct.App.2005). In justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968); *Cerino,* 141 Idaho at 738, 117 P.3d at 878.

■ If reasonable suspicion of an existing exigency is shown when the police are applying for a search warrant, then the court is acting within the constitution in issuing a no-knock warrant. *Banks,* 540 U.S. at 36–37, 124 S.Ct. at 525, 157 L.Ed.2d at 352. Idaho courts recognize the no-knock warrant. *See e.g. State v. Gomez,* 101 Idaho 802, 810, 623 P.2d 110, 118 (1980) (where the magistrate included a no-knock provision on a search warrant when presented with information that the alleged drugs in the home to be searched were possibly stored in the bathroom for easy and rapid disposal); *State v. Kester,* 137 Idaho, 643, 647, 51 P.3d 457, 461 (Ct.App.2002) (where the court issued a no-

knock warrant to assure officer safety when the warrant application alleged the occupant of the residence was trading drugs for firearms and had threatened to kill an informant by holding a gun to his head); *State v. Pierce,* 137 Idaho 296, 297, 47 P.3d 1266, 1267 (Ct.App.2002) (where a no-knock warrant was issued for a raid on a methamphetamine laboratory).

The United States Supreme Court has held that there is no blanket exception to the knock-and-announce requirement for drug investigations. *See Richards,* 520 U.S. at 393, 117 S.Ct. at 1421, 137 L.Ed.2d at 623. In *Richards,* the police had requested a no-knock search warrant. A warrant was granted to search Richard's motel room for drugs and paraphernalia, but the magistrate specifically denied the no-knock authorization. When the police went to execute the warrant, the officer who knocked on the door was disguised as a maintenance man and did not identify himself as a police officer. Richards opened the door a crack and, seeing a uniformed police officer behind the disguised officer, slammed the door shut, locking it. The officers eventually kicked the door in, announcing in the process that they were the police. Richards was apprehended and cocaine was found in the room. Richards moved to suppress the evidence on the grounds the police failed to knock and announce before entering. The Wisconsin Supreme Court affirmed the lower court's denial of Richards's motion. The Wisconsin Supreme Court held that, given the dangerous nature of felony drug criminals, the ease with which some drugs can be destroyed and the character of the drug culture generally, a no-knock entry is always justified in felony drug cases.

The United States Supreme Court rejected the Wisconsin Supreme Court's blanket exception rule.[2] The United States Supreme Court determined that, while felony drug investigations may pose special risks to officer safety and the preservation of evidence, it is an overgeneralization to find every drug investigation poses these risks. *Id.* at 392–94, 117 S.Ct. at 1420-21, 137 L.Ed.2d at 623-

---

**2.** The United States Supreme Court, though rejecting blanket exceptions to the knock-and-an-nounce rule, upheld the denial of the suppression motion in *Richards* on other grounds.

24. Additionally, if a drug crime category exception to the knock-and-announce rule is recognized, that same logic could be applied to a multitude of other crimes and would eventually make the knock-and-announce rule under the Fourth Amendment essentially meaningless. *Id.* at 394, 117 S.Ct. at 1421, 137 L.Ed.2d at 624. Given this, the Court held that justification for a no-knock entry must be determined on a case-by-case analysis, and there cannot be an exception to this analysis by making particular categories of alleged crimes an automatic exigent circumstance. *Id.* at 392–94, 117 S.Ct. at 1420-21, 137 L.Ed.2d at 623-24.

■■■■■ Even if exigent circumstances are initially absent, however, reasonable suspicion of an exigency may develop when the police arrive to execute a search warrant, and the police may then proceed with immediate forced entry. *Banks,* 540 U.S. at 37, 124 S.Ct. at 525, 157 L.Ed.2d at 352. The police may also conduct a forced entry after knocking and announcing if exigent circumstances arise prior to an occupant answering the door. *See id.* at 38, 124 S.Ct. at 526, 157 L.Ed.2d at 353. Indeed, the United States Supreme Court stated that post-knock exigencies are to be treated the same as exigencies giving rise to a no-knock entry. *Id.* at 41, 124 S.Ct. at 528, 157 L.Ed.2d at 355. The type of evidence that provides reasonable suspicion of exigent circumstances, allowing forced entry after the police arrive or after they knock and announce, is to be determined on a case-by-case basis by considering the totality of the circumstances. *Id.* at 36, 124 S.Ct. at 525, 157 L.Ed.2d at 352.

In *Banks,* police executed a search warrant at a two-bedroom apartment in which the occupant was suspected of dealing rock cocaine. After loudly knocking on the door and announcing their identity and authority, they received no response. The police feared the cocaine was being disposed of in some fashion and, after waiting fifteen to twenty seconds, entered the apartment by force. In *Banks,* the Court held that there was reasonable basis to suspect the imminent loss of evidence given the ease with which rock cocaine could be disposed of. *Id.* at 40–41, 124 S.Ct. at 527-28, 157 L.Ed.2d at 354-55. The

Court further held that fifteen to twenty seconds was an appropriate time to wait with no response before entering by force, given the facts known to the police. *Id.*

The Court also noted that the significant circumstances creating a reasonable suspicion were the officers' arrival during the middle of the day when anyone would normally be up and awake, the easily disposable nature of rock cocaine, and the sufficiency of fifteen to twenty seconds for a suspect to get to a drain or toilet to destroy evidence. *Id.* at 40, 124 S.Ct. at 527 157 L.Ed.2d at 354. The Court also stated it was not the time it would take a for a person to reach the door of the residence and allow the police in that is the crucial factor in determining if reasonable suspicion exists, but rather what facts demonstrate the exigency claimed by the police. *Id.*

In the present case, the district court held that the five-second delay between the knock-and-announce and the forced entry would be insufficient time for anyone in the home to answer the door. Despite this, the testimonial evidence that a large quantity of drugs in a residence increases the likelihood of armed resistance convinced the district court that officer safety was potentially at risk in this situation. The district court held that, given the totality of the circumstances, the ten-second delay between the actual announcement and the forced entry was sufficient time when balancing an advanced warning to the occupants with the need for officer safety. The police had no evidence of weapons, violent individuals or any other specific, articulable officer safety risks inside Ramos's home. The district court found that the allegation of a high quantity of drugs allegedly present in Ramos's home was sufficient, by itself, to justify the cursory knock-and-announce.

In essence, the district court held that, even with the absence of specific and articulable risks to officer safety, allegations of large drug quantities in the home were alone sufficient to justify what equates to an almost immediate entry when police executed the search warrant. Such a holding effectively creates a blanket exception to the rule, allowing the police to perform the knock-and-

announce in an improper manner for any alleged high-volume drug crime. This is the type of blanket exception to the knock-and-announce rule based on a class or type of crime that the United States Supreme Court held was impermissible in *Richards*. Therefore, we conclude that, in the absence of any other articulable facts, the alleged volume of drugs in the home was itself insufficient to create reasonable suspicion of an exigency allowing the police to almost immediately enter the home after knocking and announcing.

The state urges us to also consider the district court's finding that SWAT officers approaching the front door of the house were exposed and could be easily seen by any occupants of the house looking out the window. We are unpersuaded. The police would have been aware of the tactical environment of the front of Ramos's house when requesting the warrant, and the record indicates they did not seek a no-knock warrant on these grounds. We note also that the visibility of the area in front of the house through windows in Ramos's home, as described in the district court's opinion, seems typical of most residential houses. We do not accept that, in every case, the exposed nature of a suburban home is a fact giving rise to reasonable suspicion of some exigency allowing for near immediate police entry into a private dwelling.

Finally, as the Supreme Court established in *Banks*, it is still permissible for the police to enter a dwelling by force prior to an occupant answering the door if reasonable suspicion of exigent circumstances arises after knocking and announcing. In *Banks*, the officers waited fifteen to twenty seconds after knocking and announcing before entering by force. The type and quantity of drugs alleged to be in the home were such that an occupant could easily have begun disposing of the drugs during the period of time the police waited for someone to answer the door. Furthermore, in *Banks* the police executed the warrant during the middle of the day when it was reasonable to assume any occupant who was home would be awake.

The police in the instant case waited approximately five seconds after knocking before entering by force. This was despite a lack of any new evidence coming to light that would create reasonable suspicion of exigent circumstances after the knock-and-announce. The type and quantity of drugs suspected to be in Ramos's home, hundreds of pounds of marijuana, would not give rise to a reasonable fear of evidence destruction within the five seconds the police waited after performing the knock-and-announce. The SWAT team arrived at Ramos's residence at 7:30 a.m. on Saturday, July 5, in the middle of the Independence Day weekend, a time when many people would be asleep in their homes. No evidence in the record, other than the alleged nature of the contraband inside, was offered to explain how a reasonable officer could conclude, within five seconds, that a danger had ripened or that there was no one home. Therefore, we now hold that, because the district court determined that the police failed to wait a reasonable length of time to allow an occupant of Ramos's home to answer the door, it erred in denying the suppression motion when no exigency existed or arose.

### B. Exclusionary Rule

The exclusionary rule is the primary guarantor of freedom from illegal police action. *State v. Rauch*, 99 Idaho 586, 592, 586 P.2d 671, 677 (1978). The rule requires the exclusion of evidence that is the fruit of illegal police conduct. *State v. Babb*, 136 Idaho 95, 98, 29 P.3d 406, 409 (Ct.App. 2001). As an essential part of the Fourth and Fourteenth Amendments, the rule applies to the states as well as the federal government. *Mapp v. Ohio*, 367 U.S. 643, 657, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081, 1091 (1961).

In its brief, the state argues that this Court should hold that suppression of evidence via the exclusionary rule is not the appropriate remedy for a violation of the Fourth Amendment knock-and-announce rule. The state notes that the United State Supreme Court has yet to decide whether the exclusionary rule is the appropriate remedy for violations of the knock-and-announce rule. The state is correct in that the United States Supreme Court has declined to deter-

mine the appropriate remedy for failure of the police to properly knock and announce prior to entering a residence under the Fourth Amendment. *See Wilson*, 514 U.S. at 937 n. 4, 115 S.Ct. at 1919 n. 4, 131 L.Ed.2d at 984 n. 4. That Court has, however, analyzed this issue when ruling on violations of the federal knock-and-announce statute, 18 U.S.C. 3109.[3] *See Sabbath v. United States*, 391 U.S. 585, 588–91, 88 S.Ct. 1755, 1757-59, 20 L.Ed.2d 828, 832-34 (1968); *Miller v. United States*, 357 U.S. 301, 306–14, 78 S.Ct. 1190, 1194-98, 2 L.Ed.2d 1332, 1336-41 (1958). The Court held that the appropriate remedy for failing to properly knock and announce as required by federal statute is suppression of any evidence found pursuant to search after the entry. *Sabbath*, 391 U.S. at 586, 88 S.Ct. at 1756, 20 L.Ed.2d at 831; *Miller*, at 313–14, 78 S.Ct. at 1197-98, 2 L.Ed.2d at 1340-41. We are unconvinced by the argument that a violation of the Fourth Amendment would not be remedied by suppression of the evidence when such suppression *is* the remedy for violation of a federal statute that provides protections similar to the Fourth Amendment.

■ In addition, long before the exclusionary rule was found to apply to the states through the Due Process Clause, it was the law in Idaho. *See State v. Conner*, 59 Idaho 695, 703, 89 P.2d 197, 201 (1939). More than half a century ago, the Idaho Supreme Court held that the "rule is well settled in this state that evidence, procured in violation of defendant's constitutional immunity from search and seizure, is inadmissible and will be excluded if request for its suppression be timely made." *Id.* More recently, in analyzing Idaho's knock-and-announce statutes, the Idaho Supreme Court held that, once it is determined a defendant's rights have been violated by police entry into a residence, evidence resulting from the entry must be suppressed. *Rauch*, 99 Idaho at 594, 586

P.2d at 679. In explaining its decision, the Court held that, any other result would completely nullify the knock-and-announce statutes and would create a dangerous situation for citizens and police officers alike. *Id.* Therefore, even if exclusion of the evidence is not the necessary remedy for the Fourth Amendment violation, it would be required here for violation of Idaho's Constitution and statutory law. Thus, we conclude that, in this case, the appropriate remedy for the failure to properly knock and announce, absent exigent circumstances, is suppression of the evidence found in Ramos's home.

### III.

### CONCLUSION

The method of police entry when executing the search warrant at Ramos's home violated her Fourth Amendment right to be free from unreasonable searches and seizures. The officers failed to reasonably comply with the knock-and-announce rule when, in the absence of any evidence giving rise to exigent circumstances, they waited an insufficient time after knocking and announcing before entering by force. The proper remedy for a violation of the knock-and-announce rule in Idaho is suppression of any evidence resulting from the search. Accordingly, the district court erred in denying Ramos's motion to suppress. Therefore, Ramos's judgment of conviction for possession of a controlled substance with intent to deliver is vacated.

Judge LANSING and Judge Pro Tem WALTERS, CONCUR.

---

3. According to 18 U.S.C. § 3109, an "officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."