**FILED**
**OCTOBER 13, 2016**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32970-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUDE JOSEPH ORTIZ SR., | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — The principal issue in this appeal is whether officers executing a search warrant at a home at a time when residents can reasonably be expected to be asleep satisfy the "knock and announce" rule by knocking and announcing their presence three times before forcing entry, but over a total elapsed time of only six to nine seconds. We hold that they do not, and conclude that Jude Joseph Ortiz's trial lawyer provided ineffective assistance of counsel when he failed to challenge the search. We reverse the conviction without prejudice and remand with directions to suppress the fruits of the search. Because we reverse, we decline to address Mr. Ortiz's remaining claims of error.

FACTS AND PROCEDURAL HISTORY

In late July 2011, in response to information from a fellow officer, Wapato police Sergeant Robert Hubbard viewed the backyard of 304 North Harding Avenue from the property of a cooperative neighbor. He saw two marijuana plants. Sergeant Hubbard applied for, and was granted, a search warrant for the property.

Sergeant Hubbard, with 11 other officers, executed the search warrant at approximately 6:47 a.m. on August 11, 2011. Sergeant Hubbard knocked on the door three times, announced "police search warrant," waited one to two seconds, and repeated that process twice more. Report of Proceedings (RP) at 151. Hearing nothing inside the home, the officers breached the front door and entered the home.

Once inside, the officers encountered Raquel Hernandez Ortiz, the mother of defendant Jude Joseph Ortiz, Sr. and the owner of the home, the defendant's 15-year old son, J.O., another teenage male, and two small children. Ms. Ortiz and the two small children appeared to be just waking up. J.O. was coming out of the bedroom where he had been sleeping and the other teenage male was still sleeping on the couch in the living room. Although Mr. Ortiz[1] lived at the home, he was not present.

Upon searching the property, the officers found 41 marijuana plants in various stages of growth and other evidence of a grow operation. Mr. Ortiz later admitted to

---

[1] Unless otherwise stated, "Mr. Ortiz" refers to the defendant, not to his son.

Sergeant Hubbard that he had taught his son how to grow marijuana and that they were growing the marijuana together. Mr. Ortiz was eventually charged with one count of manufacture of a controlled substance, one count of involving a minor in an unlawful controlled substance transaction, and several other counts not relevant on appeal.

During trial, the following exchange occurred between the prosecutor and Sergeant Hubbard:

> Q. Okay. So is it any surprise to you when you're trying to catch people unawares early in the morning when they're dead asleep that they're not going to be able to get up in time in those three short announcements to get up and open the door voluntarily?
> A. It's not a surprise.

RP at 193. At the end of trial, the jury found Mr. Ortiz guilty on both counts. Mr. Ortiz appeals.

## ANALYSIS

Mr. Ortiz argues he received ineffective assistance of counsel because his defense attorney failed to challenge the execution of the search warrant for failure to comply with the knock and announce rule.[2]

---

[2] Where it is argued on appeal that a trial lawyer's failure to move to suppress evidence constitutes ineffective assistance, the trial court record will often be insufficient for the defendant to make the required showing of prejudice, since the State and defendant never had an incentive or opportunity to develop the relevant factual record. *E.g., State v. McFarland*, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995). In this case, there was considerable testimony at trial as to how the warrant was executed. The State does not contend that there is too limited a record for us to address prejudice.

3

Effective assistance of counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Mierz*, 127 Wn.2d 460, 471, 901 P.2d 286 (1995). A court reviewing a claim of ineffective assistance of counsel engages in a two-pronged test. First, the defendant must show he received deficient representation. *Mierz*, 127 Wn.2d at 471 (citing *Strickland*, 466 U.S. at 688-89). Deficient performance is determined using an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705-06, 940 P.2d 1239 (1997). In this assessment, the appellate court will indulge in a strong presumption that the defendant was properly represented. *State v. Tilton*, 149 Wn.2d 775, 784, 72 P.3d 735 (2003). "If trial counsel's conduct can be characterized as legitimate trial strategy or tactics, it cannot serve as a basis for a claim that the defendant received ineffective assistance of counsel." *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002).

Second, the defendant must show he suffered prejudice as a result of the deficient performance. *Mierz*, 127 Wn.2d at 471 (citing *Strickland*, 466 U.S. at 687). Prejudice will result if "'counsel's errors were so serious as to deprive the defendant of a fair trial.'" *Id.* (quoting *Strickland*, 466 U.S. at 687). "This showing is made when there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different." *Id.* If a defendant fails to establish either prong, his claim fails. *State v.*

4

*Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). "A claim of ineffective assistance of counsel presents a mixed question of fact and law reviewed de novo." *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

## I. Deficient Performance

Mr. Ortiz claims defense counsel's performance was deficient because there was no legitimate strategic or tactical reason for not moving to suppress the evidence based on a violation of the knock and announce rule.

The knock and announce rule has both constitutional and statutory components. The Fourth Amendment to the United States Constitution requires "that a nonconsensual entry by the police 'be preceded by an announcement of identity and purpose on the part of the officers.'" *State v. Coyle*, 95 Wn.2d 1, 6, 621 P.2d 1256 (1980) (quoting *State v. Young*, 76 Wn.2d 212, 214, 455 P.2d 595 (1969)). This is part of the "constitutional requirement that search warrants be reasonably executed." *State v. Alldredge*, 73 Wn. App. 171, 175, 868 P.2d 183 (1994).

The parallel requirement of article I, section 7 of the Washington Constitution has been codified in RCW 10.31.040. *State v. Lehman*, 40 Wn. App. 400, 401, 698 P.2d 606 (1985). RCW 10.31.040 provides: "To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his or her office and purpose, he or she be refused admittance." "To comply with the statute, the police must, prior to a

5

nonconsensual entry, announce their identity, demand admittance, announce the purpose of their demand, and be explicitly or implicitly denied admittance." *Coyle*, 95 Wn.2d at 6. "The requirement of a demand for admittance and an explicit or implicit denial of admittance have been merged into a 'waiting period,' often linked to whether the police officers are refused admittance." *State v. Richards*, 136 Wn.2d 361, 370, 962 P.2d 118 (1998). "Strict compliance with the rule is required unless the State can demonstrate that one of the two exceptions to the rule applies: exigent circumstances or futility of compliance." *Id.* at 372. "The proper remedy for an unexcused violation is suppression of the evidence obtained by the violation." *Coyle*, 95 Wn.2d at 14.

The parties agree the police knocked on the door and announced "police search warrant" three times. The only disputed issue is whether the police waited long enough before they broke down the door.

"Whether an officer waited a reasonable time before entering a residence is a factual determination to be made by the trial court and depends upon the circumstances of the case." *Richards*, 136 Wn.2d at 374. The reasonableness of the waiting period is evaluated in light of the purposes of the rule, which are: "(1) reduction of potential violence to both occupants and police arising from an unannounced entry, (2) prevention of unnecessary property damage, and (3) protection of an occupant's right to privacy." *Coyle*, 95 Wn.2d at 5. To comply with the constitutional reasonableness requirement, the waiting period ends once the rule's purposes have been fulfilled and waiting would serve

6

no purpose. *Alldredge*, 73 Wn. App. at 176. Similarly, under the statute, "the waiting period ends *as soon as* the police are refused admittance, but *not later than* when the purposes of the rule are fulfilled." *Id.* at 178. "The police need not wait for an actual refusal following their announcement; denial of admittance may be implied from the occupant's lack of response." *State v. Garcia-Hernandez*, 67 Wn. App. 492, 495, 837 P.2d 624 (1992).

In this case, due to the early hour of the search, the occupants were foreseeably asleep. Six to nine[3] seconds was not a reasonable amount of time for them to respond to the police, and thus no denial of admittance can be inferred. Even Sergeant Hubbard admitted it would not be a surprise that sleeping occupants would be unable to respond in that amount of time. In addition, the purposes of the rule were not fulfilled due to the property damage done by battering in the door. The police did not comply with the rule.

The State nonetheless cites five cases that it claims support its position that the knock and announce rule was not violated. Each case is distinguishable from the facts present here.

In *State v. Lomax*, 24 Wn. App. 541, 543, 603 P.2d 1267 (1979), an officer approached the defendant's home at about 5:30 p.m., "knocked loudly, announced his identity and purpose in a loud voice, and waited 10 or 12 seconds without receiving any

---

[3] One second for each of the three knock and announces (three seconds), with one to two seconds in between (three to six seconds).

7

response." Inside he heard "a very noisy stereo or television," so he loudly knocked and announced himself for a second time, and waited 10 to 12 seconds without receiving a response. *Id.* "He knocked and announced a third time, waited a few more seconds without receiving a response and then ordered the door broken down." *Id.* The court held the police did not violate the knock and announce rule, reasoning the noise from the television indicated the defendant was inside, and that for the time of day, the officer gave the defendant a reasonable amount of time to answer the door. *Id.* at 543-44.

Likewise, in *State v. Johnson*, 94 Wn. App. 882, 886-87, 974 P.2d 855 (1999), police approached the defendant's home at 7:45 p.m. An officer knocked and announced, waited a few seconds, and knocked and announced again. *Id.* at 887. He heard quick movement on the other side of the door "which did not sound like people were moving toward the door," and, thinking that the occupants were trying to discard evidence, ordered the door forced open. *Id.* at 889, 887. "[T]he trial court found that five to ten seconds passed between the first announcement and the forcible entry," and held the wait was reasonable. *Id.* at 890-91. The appellate court agreed, emphasizing that sounds of quick movement behind the door reasonably indicated the occupants were destroying evidence. *Id.* The implication was that the occupants impliedly denied the officers admittance by destroying the evidence instead of answering the door.

Similarly, in *State v. Schmidt*, 48 Wn. App. 639, 641, 740 P.2d 351 (1987), as police approached a shed on the defendant's property, dogs began barking. Nearing the

8

door, they heard people inside. *Id.* The officers knocked twice on the shed door, which was about two inches ajar, and yelled "'Sheriff's Office. Search warrant.'" *Id.* It became very quiet after the knock, and the officers waited only three seconds before pushing the door open. *Id.* The trial court concluded the three-second wait was reasonable. *Id.* at 645-47. The appellate court agreed, finding that the dogs may have alerted the people in the shed, the officers knocked and announced, and the hush that came over the shed after the knock and the small size of the shed indicated the officers were denied admittance. *Id.*

In *State v. Jones*, 15 Wn. App. 165, 166, 547 P.2d 906 (1976), officers approached the defendant's home at about 9:30 p.m. The defendant had been asleep, but after hearing the officers open the squeaky mail slot in the door, he approached to investigate. *Id.* At that moment, the officers knocked, and the defendant responded, "'Who is it?'" *Id.* "After an attempted ruse . . . the officer announced his identity and purpose. When the door was not opened in approximately 10 seconds, the officer kicked in the door." *Id.* Noting the time between the knock and disclosure of purpose and the forceful entry was "borderline," the appellate court upheld the trial court's finding that "the defendant's failure to respond in any manner constituted a refused admittance," and that the wait period was reasonable. *Id.* at 167.

Finally, in *Garcia-Hernandez*, the police approached an apartment building where the defendant lived at about 1:30 a.m. Roughly 10 people were sitting on the building's

9

front porch, but when the police officers stepped out of their car, one of them yelled something and four scrambled off the porch into the apartments. *Garcia-Hernandez*, 67 Wn. App. at 494. Worried someone would alert the defendant that the police were present, the officers detained the rest of the people on the porch. *Id.* Meanwhile, an officer went to the defendant's apartment. *Id.* After finding the door ajar, he pushed it open and twice yelled, "'Seattle Police, search warrant.'" *Id.* He waited five seconds, and receiving no response, entered the apartment. *Id.* The trial court concluded that the officer substantially complied with the knock and announce rule. *Id.* at 496. The appellate court agreed. *Id.* It reasoned the commotion on the porch likely alerted the defendant; the officer twice announced himself, thereby reducing the potential for violence; the door was ajar so there was no danger of property damage and it was likely the apartment was occupied and the inhabitants were not asleep; and the officer had a warrant so the defendant's privacy interests were limited. *Id.* at 497-98. Under such circumstances, five seconds "was reasonable, and . . . the defendant's failure to respond during that time was an implicit denial of admission." *Id.* at 498.

In each of these cases, the officers possessed facts that made it reasonable to assume the defendants were both present and awake. In *Lomax*, the television or radio was on. In *Johnson*, the police heard quick movement behind the door. In *Schmidt*, the officers heard noise, and then a hush after they knocked. In *Jones*, the officers actually spoke with the defendant. In *Garcia-Hernandez*, the fact that the door was ajar indicated

10

to the officers that the defendant was present and awake. Where the police know the defendant is present and awake, the defendant's failure to respond is more likely an implied denial of admission. But here, the officers did not have any indication the home's occupants were present or awake.

Moreover, unlike in the searches in *Lomax* and *Johnson* that occurred in the early evening—a time when it would be reasonable to assume occupants are not sleeping and can respond more quickly to a knock—here the search occurred at 6:47 a.m. Given the hour of the day, the police could not reasonably infer a denial of admittance after such a short waiting period. And, whereas in *Garcia-Hernandez* all the purposes of the rule were upheld, here the police caused property damage by battering in the door.

The cases Mr. Ortiz cites, though not from this jurisdiction, are more persuasive. In *Idaho v. Ramos*, 142 Idaho 628, 629, 130 P.3d 1166 (2005), the police arrived at the defendant's home at 7:30 a.m. over Independence Day weekend. The officers knocked rapidly, and shouted "'Police, search warrant,'" and "'Policia.'" *Id.* The knocking took five seconds, and the police waited five more seconds and then forcibly entered the home. *Id.* They found the residents asleep. *Id.* The trial court found the 10-second wait was not enough time for anyone to answer the door, but upheld the search due to exigent circumstances. *Id.* at 632. The Idaho Supreme Court found no exigent circumstances and reversed, agreeing with the trial court's initial reasoning that most people would be

11

asleep at 7:30 a.m. on a holiday weekend and 10 seconds was not enough time to allow an occupant to answer the door. *Id.* at 633.

Similarly, in *Richardson v. Florida*, 787 So. 2d 906, 907 (Fla. Dist. Ct. App. 2001), the police approached the defendant's home at 5:30 a.m. to execute a search warrant. An officer "did three sets of three loud knocks on the door while yelling 'Bradenton Police Department, search warrant,' pausing slightly between each set." *Id.* The police heard nothing and then battered in the door. *Id.* The officers estimated that 10 seconds passed between the first knock and forcible entry. *Id.* The trial court found this period of time reasonable, but the appellate court reversed, reasoning that the inhabitants were probably asleep due to the early hour of the search, and 10 seconds did not give them a reasonable amount of time to respond to the door. *Id.* at 908.

This case is nearly identical to these two cases.

Because the police violated the knock and announce rule, and there is no legitimate strategic or tactical reason for failing to challenge the search, counsel was deficient for not moving to suppress the evidence.

## II.    *Prejudice*

To succeed on his claim of ineffective assistance of counsel, Mr. Ortiz must also show he was prejudiced by counsel's deficient performance. Mr. Ortiz claims he was prejudiced because had counsel moved to suppress the evidence, the State would not have been able to present sufficient evidence to establish the underlying charges. He has

12

demonstrated a reasonable probability that the result of trial on the two challenged counts would have been different.

Mr. Ortiz has established that he was deprived of his constitutional right to effective assistance of counsel. We reverse his convictions for manufacture of a controlled substance and involving a minor in drug dealing without prejudice and remand with directions to suppress the fruits of the illegal search.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Lawrence-Berrey, J.

13