IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37699-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DILLON DWAYNE ARMSTRONG, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Police pulled Dillon Armstrong over for an unsafe lane change that caused the officer to swerve. During the stop, Armstrong displayed signs of being under the influence, but denied drugs were in his car. He eventually admitted that there might be pieces from a broken glass meth pipe near the driver's seat. Although he initially consented to a search of the cab, he denied permission to search the trunk. After he revoked permission to perform any search, officers seized the vehicle and sought a search warrant.

In the warrant affidavit, the officer indicated that Armstrong appeared to be under the influence of drugs, admitted using methamphetamine within the last two or three days, and admitted that there might be a broken meth pipe in the vehicle. A warrant was

apparently obtained. After cracking open a locked safe in the trunk, officers found 96 grams of methamphetamine.

Through his attorney, Armstrong filed a motion to suppress evidence of the search but only argued that the stop of his vehicle was pretextual. He did not argue that the warrant affidavit failed to establish a nexus to the safe, and he did not request a *Franks*[1] hearing to challenge statements made or omitted in the affidavit. During the motion, counsel withdrew the pretext argument and the court found that the affidavit provided probable cause to issue a warrant to search the vehicle.

On appeal Armstrong raises several issues for the first time. First, he argues that the affidavit fails to establish a nexus to the trunk or the safe. In the alternative, he contends that the officers made material omissions in the warrant affidavit by failing to advise the judicial officer that Armstrong told the officers that the pipe was located near the driver's seat. Finally, he asserts that his attorney was ineffective for failing to raise these issues below.

While we have concerns about the integrity of the affidavit and warrant, the record on appeal is insufficient for us to decide these issues on the merits. The search warrant is not part of the record on appeal. Any attempt to decide whether the warrant was overbroad would necessarily require us to make assumptions about the contents of the

---

[1] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

warrant. The issues raised on appeal need to be raised in a personal restraint petition where the defendant can supplement the record.

## BACKGROUND

### A. STOP[2]

Around 1 a.m. on September 11, 2019, a deputy for the Whitman County Sheriff's Department stopped Armstrong for making an unsafe lane change in Pullman. During the infraction stop, the deputy observed a passenger in the car with Armstrong. The deputy also noticed that Armstrong kept his hood up and would not make eye contact. Armstrong appeared to be breathing heavily and his pupils were dilated. Armstrong told the deputy that he was coming from Spokane where he had been visiting his sick uncle, and that he was headed to Lewiston. Based on safety concerns the deputy asked Armstrong to step out of his vehicle and walk back to the patrol car while he continued the investigation.

As he was conducting his records check, the deputy continued speaking with Armstrong. The deputy observed that Armstrong was unable to stand still, was speaking at a fast pace, had dilated pupils, pick marks on his face, and was sweating even though the air temperature was approximately 45 to 50 degrees. Based on the deputy's training and experience, he believed Armstrong was exhibiting signs of being under the influence

---

[2] During Armstrong's motion to suppress, the two officers testified and the State played their body camera videos. The facts set forth here are derived from that hearing.

of methamphetamine. Upon questioning, Armstrong initially indicated that he had stopped using drugs when his aunt died from drug use but then admitted that he had used methamphetamine as recently as three or four days prior. He denied that there were drugs or pipes in the car. When asked if a narcotics K-9 would alert to his vehicle, Armstrong said it probably would since he had been with his uncle, who was a heavy methamphetamine user. His uncle had been smoking methamphetamine around him earlier that day.

About 10 minutes into the stop, a sergeant arrived and continued to speak with Armstrong while the deputy wrote up a traffic infraction for no proof of insurance. The sergeant asked Armstrong when he had last used methamphetamine, and Armstrong responded a couple of days ago. Armstrong again admitted that he was in the same room as someone smoking methamphetamine earlier that day but stated he did not smoke any himself and did not have anything on himself at the time. The sergeant then asked Armstrong whether he had anything on him and asked whether he had "a pipe or something" in his car. Sergeant Bodycam (Sept. 11, 2019) at 53 sec. to 55 sec. Armstrong again denied having anything in the car but then mentioned the possibility of broken glass from when he had smashed a pipe in his car "[be]cause I was so high." Report of Proceedings (RP) at 68-69; Sergeant Bodycam, *supra*, at 1 min., 1 sec. to 1 min., 3 sec. The only substance talked about up until this point was methamphetamine.

The sergeant then asked again if there was methamphetamine in the car, and Armstrong said there was not. When the sergeant asked if he could take a look, Armstrong replied, "If you want[, but t]here's no reason to." RP at 69; Sergeant Bodycam, *supra*, at 1 min., 9 sec. to 1 min., 13 sec. He then stated that if there were drugs in the vehicle, they would be in the cab and that he would only give permission to search the cab but not the trunk because he had illegal aftermarket car parts in his trunk. The sergeant indicated that he did not care about illegal aftermarket parts and attempted to clarify Armstrong's consent to search. When asked what he meant by the "cab," Armstrong clarified that he meant the front and back seats, but not the trunk. After the sergeant indicated that Armstrong could limit the search, Armstrong said he really did not want anything searched.

After questioning the passenger, the sergeant returned to Armstrong and said, "So, basically there might be some broken glass is all we're gonna find in your car." RP at 73; Sergeant Bodycam, *supra*, at 4 min., 7 sec. to 4 min., 14 sec. Armstrong answered affirmatively, indicating it was a "weed" pipe. RP at 73; Sergeant Bodycam, *supra*, at 4 min., 15 sec. to 4 min. 18 sec. This was the first reference to a substance other than methamphetamine in their conversation. After discussing what type of pipe it was, the sergeant asked where the broken pipe was located, and Armstrong stated that he had cleaned up most of the pipe, but there still may be shards near the driver's seat.

5

The sergeant then told Armstrong that he was going to seize the car and apply for a search warrant. At this point, the deputy came back out of his patrol car and handed Armstrong a ticket for lack of proof of insurance. He informed Armstrong and his friend that they were free to go. Armstrong then asked the sergeant to grab his house keys and cigarettes out of his car. While the sergeant was retrieving them from the car, as a ruse, he said, "[I] thought you said that was a weed pipe[, that's a] meth pipe that was broken." RP at 77; Sergeant Bodycam, *supra*, at 7 min., 57 sec. to 8 min., 4 sec. Armstrong said, "No, I know what you are talking about, that was—If there was a meth pipe in there, that was back from when I was using heavily." RP at 77, Sergeant Bodycam, *supra*, at 8 min. 7 sec. to 8 min. 16 sec. In truth, the sergeant did not find a pipe in the vehicle while retrieving Armstrong's keys. Armstrong and his passenger were told they were free to leave, but the deputy seized the vehicle and sought a search warrant.

After describing the initial stop to the on-call judicial officer, the deputy made the following statement in support of a search warrant:

> I spoke to the driver while I was [typing] up these documents and learned that he is coming from Spokane to Lewiston tonight. He was visiting his uncle who's having health problems. He admitted to me that he has used methamphetamine in the last—two to three days and he had been addicted to—methamphetamine in the past.
>
> I noticed that the driver, who is identified as—Dillon D. Armstrong, date of birth 11/09/99, a white male, had dilated pupils, he could not stop shaking while he was talking to me. I also noticed that he had sweat on his head. The current air temperature is approximately 47 degrees. I am in a full police uniform and am not sweating.

6

Based on my training and experience all of these things are consistent with someone who is under the influence or has recently used methamphetamine.

I asked—Mr. Armstrong if there was any methamphetamine or any illegal substances in his vehicle. He said no.

At that time, [Sergeant] Jordan arrived and began talking to Mr. Armstrong. During that conversation, Mr. Armstrong told Sgt. Jordan that there was a broken meth pipe inside of the vehicle.

Later on during that conversation Mr. Armstrong changed the story and told Sgt. Jordan that that was actually a marijuana pipe.

A few minutes later Mr. Armstrong again[ ] changed his story and admitted that he had been extremely high from using methamphetamine and had broke[n] the glass meth' pipe in his vehicle, and confirmed that it was a methamphetamine pipe.

Based on my training and experience methamphetamine pipes broken or intact have a white crystal substance on them that is methamphetamine.

Sgt. Jordan at that time asked Mr. Armstrong if he could consent search his vehicle [sic]. Mr. Armstrong told Sgt. Jordan he could search the driver's side area and the back of the vehicle but told Sgt. Jordan he could not search anything else.

Mr. Armstrong later changed that and said he could not search the vehicle.

At that time, based on the information that Sgt. Jordan had received and based on my initial observations of Mr. Armstrong and his own admissions, Sgt. Jordan seized the car pending application of a search warrant.

At this time both occupants of the vehicle have been released from detention and are no longer on scene.

That is the probable cause application.

RP at 37-38.

The deputy called the judicial officer back a few minutes later and supplemented the affidavit with his training and experience. The judicial officer apparently received the warrant by e-mail, signed it, and returned it to the deputy, but the actual warrant is not part of the record below or on appeal.

After receiving the signed warrant, the officers searched Armstrong's vehicle. In the trunk, they found a small locked safe and pried it open. Inside the safe they found 96 grams of methamphetamine.

Armstrong was subsequently arrested and charged with possession of a controlled substance with intent to deliver.

B. PROCEDURE

Prior to trial, Armstrong moved to suppress the contents of the safe, arguing that the stop was pretextual and the warrant lacked probable cause. The motion was based on a defense theory that police had received a phone call before the stop, informing them that Armstrong had drugs in his car. In response, the State denied the existence of any such phone call and argued that there was probable cause to believe there was methamphetamine residue on a broken pipe in the car. At the conclusion of the hearing, Armstrong's attorney withdrew his pretext challenge and stipulated that there was probable cause to support the warrant. The court found probable cause to support the warrant and denied the motion to suppress. A jury found Armstrong guilty as charged.

ANALYSIS

Armstrong challenges the search warrant on appeal, raising several arguments for the first time. Specifically, he contends that the search warrant lacked probable cause because the warrant affidavit failed to establish a nexus between the crime alleged, the evidence being sought, and the location to be searched, i.e., a locked safe in the trunk of the car. He also argues that to the extent the four corners of the affidavit provided probable cause to search the entire vehicle, the officer omitted material facts from the affidavit that would have limited the scope of the warrant. Finally, he contends that his attorney at trial was constitutionally ineffective for failing to challenge the warrant and request a *Franks* hearing.

We decline Armstrong's invitation to consider these issues because the record before us is not sufficient.

*Probable cause to search the trunk*

Armstrong's first issue on appeal is whether the trial court erred in denying his motion to suppress evidence found during the execution of the search warrant. While he admits that the warrant affidavit establishes probable cause to believe he committed the crime of simple possession of a controlled substance for residue suspected to be in the car, he asserts that the facts outlined in the affidavit are insufficient to support a search of the vehicle and specifically the trunk. In addition, he contends that to the extent the

9

affidavit suggests that evidence of drug use will be found somewhere in the vehicle, the affidavit omits a material fact that would have limited the scope of the search.

Armstrong did not raise these issues below. The State was not given an opportunity to present evidence on this issue, and the trial court did not make findings or conclusions on this issue. We generally decline to consider issues raised for the first time on appeal. RAP 2.5; *State v. McFarland*, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). While acknowledging this deficiency, Armstrong argues that he is raising a manifest error affecting a constitutional right that can be adequately addressed with the record before this court. RAP 2.5(a). We disagree.

Claims concerning a "manifest error affecting a constitutional right" may be raised for the first time on appeal. RAP 2.5(a)(3); *McFarland*, 127 Wn.2d at 333. A constitutional error is "manifest" under RAP 2.5 only if it was "an obvious error that the trial court would be expected to correct even without an objection." *State v. Hood*, 196 Wn. App. 127, 135-36, 382 P.3d 710 (2016) (citing *State v. O'Hara*, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009)); *State v. Ramirez*, 5 Wn. App. 2d 118, 133, 425 P.3d 534 (2018). A manifest error is "'unmistakable, evident or indisputable.'" *State v. Burke*, 163 Wn.2d 204, 224, 181 P.3d 1 (2008) (quoting *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)). The defendant must show actual prejudice on appeal for the error to be deemed manifest. *McFarland*, 127 Wn.2d at 333. "An appellant demonstrates actual prejudice when he establishes *from an adequate record* that the trial court likely

would have granted a suppression motion." *State v. Abuan*, 161 Wn. App. 135, 146, 257 P.3d 1 (2011) (emphasis added).

Here, the record is inadequate to address Armstrong's issues on direct appeal. To begin with, we cannot determine whether the warrant was supported by probable cause when the warrant is not part of the record below or on appeal.

The Fourth Amendment to the United States Constitution and article I, § 7 of the Washington Constitution require probable cause for a search warrant to be issued. *State v. Lyons*, 174 Wn.2d 354, 359, 275 P.3d 314 (2012). "Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). Probable cause requires a nexus between the criminal activity and the items to be seized as well as a nexus between the item to be seized and the place to be searched. *Id*.

Armstrong admits that the affidavit provides probable cause to believe that drug residue would be found in the vehicle. Nevertheless, he contends that the affidavit was insufficient to support a search of the vehicle because the affidavit did not identify the particular area of the vehicle where the residue would be found. In support of his argument that the affidavit must provide this level of specificity, he cites to a Tenth

11

No. 37699-1-III
*State v. Armstrong*

Circuit case that addressed a <u>warrantless</u> search.[3]  *See United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993).  In *Nielsen*, the court held that the smell of burnt marijuana (suggesting recent use) did not support a warrantless search of the trunk after police pulled over the driver.  *Id.*  The holding in *Nielsen* is unique and has not been cited by the United States Supreme Court, the Ninth Circuit, or any Washington State courts. Armstrong fails to cite any controlling case law that requires a search warrant affidavit to describe a detailed nexus between the contraband believed to be in a vehicle and each unique area or container of the vehicle.  In this case, the officer's probable cause to believe that contraband would be located in the vehicle was sufficiently precise to support a search warrant of the vehicle in general.

Armstrong also contends that the affidavit failed to establish a nexus to the trunk. Any opinion about the warrant's validity would necessarily require us to make assumptions about the warrant's language and the search authorized by the warrant. While we can reasonably assume that the warrant generally authorized a search of the vehicle, we do not know if the warrant specifically included or excluded the trunk or

---

[3] In his reply brief, Armstrong contends that for purposes of appeal, the distinction between a warrantless search and search pursuant to a warrant is irrelevant because both require a finding of probable cause.  Reply Br. at 10.  Armstrong's argument fails to acknowledge the different standards of reviewing a search warrant and a search without a warrant.  *See State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008) (The issuance of a search warrant is given great deference and reviewed for abuse of discretion); *State v. Boisselle*, 194 Wn.2d 1, 10, 448 P.3d 19 (2019) (The State bears a heavy burden in showing that a warrantless search falls within one of these exceptions).

12

locked containers found within the vehicle.  Nor do we know what evidence was being

sought.  The affidavit indicated that officers believed they would find a drug pipe with

methamphetamine on it.  Did the warrant authorize a search for drugs in general or just

this pipe?  This is relevant because a warrant authorizing the search of a location for

particular evidence of a crime generally allows law enforcement to open any locked

containers found therein which could contain the sought-after evidence.  "A warrant to

search a vehicle would support a search of every part of the vehicle that might contain the

object of the search . . . [and] applies equally to all containers."  *United States v. Ross*,

456 U.S. 798, 821-22, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982); s*ee also State v.

Witkowski*, 3 Wn. App. 2d 318, 415 P.3d 639 (2018) (warrant to search house for guns

authorized police to pry open a locked gun safe found inside the home).

*Franks Hearing*

Armstrong's argument for a *Franks* hearing is likewise not supported by the

record on appeal.  Under the Fourth Amendment and article I, § 7, factual omissions or

inaccuracies in a warrant affidavit may be grounds to invalidate the warrant where the

omissions or inaccuracies are both material and made with reckless disregard for the

truth.  *State v. Chenoweth*, 160 Wn.2d 454, 462, 479, 158 P.3d 595 (2007).  Where a

defendant makes a "substantial preliminary showing" that officers intentionally or

recklessly omitted or misstated a fact in a search warrant affidavit and that this omission

or misstatement was material to the determination of probable cause, the trial court must

grant the defendant's request for a *Franks* hearing. *State v. Atchley*, 142 Wn. App. 147, 157-58, 173 P.3d 323 (2007).

Armstrong's assertion that the officers recklessly or intentionally omitted material facts from their affidavit requires even more assumptions than the first issue on probable cause. First, we would need to make assumptions about the warrant as noted above. Second, we would need to assume that there were material omissions. Third, we would need to assume that counsel could make a substantial preliminary showing that the omission was reckless or intentional. All of these conclusions require facts outside the record. While Armstrong told the officers that remnants of a drug pipe may be near the driver's seat, the officers were not questioned or cross-examined about this information. We do not know if they could see this location (the transcript suggests that Armstrong points to the location while talking to the officer) or whether they thought it was relevant, and if so, why it was omitted from the affidavit. *See Chenoweth*, 160 Wn.2d at 470 (negligent or inadvertent omissions are insufficient to invalidate a warrant).

Armstrong cannot demonstrate prejudice sufficient to show a manifest error affecting a constitutional right. The record is insufficient to determine if there were errors, and if so, whether the errors were manifest.

*Ineffective Assistance of Counsel*

In the alternative, Armstrong argues that his attorney was constitutionally ineffective for failing to challenge the search warrant. Criminal defendants have a

14

constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Claims of ineffective assistance of counsel are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

A defendant raising this claim bears the burden of showing (1) that his counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, (2) there is a reasonable probability that but for counsel's poor performance the outcome of the proceedings would have been different. *McFarland*, 127 Wn.2d at 334-35. If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In reviewing the record for deficiencies, there is a strong presumption that counsel's performance was reasonable. *McFarland*, 127 Wn.2d at 335. The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation. *Id*. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). When counsel's conduct can be characterized as a legitimate trial strategy or tactic, performance is not deficient. *Kyllo*, 166 Wn.2d at 863.

Failure of defense counsel to challenge the execution of a search warrant without any strategical reason has been found to be objectively unreasonable under this analysis. *State v. Oritz*, 196 Wn. App. 301, 306, 383 P.3d 586 (2016). However, there is no presumption that a CrR 3.6 hearing is required every time there is a question as to the validity of a search. *McFarland*, 127 Wn.2d at 336. "[T]he defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *Id*. at 336.

For the same reason we set forth above, we decline to reach the merits of Armstrong's ineffective assistance of counsel claim. The warrant is not part of the record below or on appeal.[4] The first mention in the record of Armstrong indicating that the pipe was near the driver's seat is during the motion to suppress. The comment did not raise any concerns for the court or the attorneys. We do not know if this issue had been discussed or investigated outside the record. On this record, Armstrong cannot demonstrate deficient performance. If there is information outside the record to support such a claim, Armstrong will need to raise it in a personal restraint petition.

---

[4] We do not even know that the warrant actually exists. On the record below, the State told the court that "There's not a written search warrant, your Honor. It is an audio search warrant application and is one of the videos that the state will be playing." RP at 6. It is possible that the State is mistakenly referring to the affidavit and not the warrant. Later in the recording, the judicial officer indicates that he has received the e-mail containing the warrant and will review it, suggesting that a written warrant does exist. RP at 39.

No. 37699-1-III
*State v. Armstrong*


Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Fearing, J.